227 N.J. Super. 429 (1988)
547 A.2d 743
STATE OF NEW JERSEY, PLAINTIFF,
v.
EDNA BROWN, DEFENDANT.
Superior Court of New Jersey, Law Division Somerset County.
Decided July 13, 1988.
*432 Kathleen P. Holly, Assistant Prosecutor, for the State (Nicholas L. Bissell, Jr., Prosecutor of Somerset County)
Randall W. Westreich, Designated Counsel for the Office of the Public Defender, for the Defendant (William J. Bizub, Deputy Public Defender of Somerset County)
IMBRIANI, J.S.C.
The defendant attacks the constitutionality of N.J.S.A. 2C:35-7 which provides that the possession of a controlled dangerous substance with intent to distribute within 1,000 feet of any school property or school bus is a crime of the third degree[1] and N.J.S.A. 2C:35-12 which deals with plea bargaining in such cases. We hold the statutes are constitutional, except we withhold judgment as to the constitutionality of that portion of N.J.S.A. 2C:35-12 dealing with post-conviction agreements. A similar attack, although not as broad as here, was rejected in State v. Morales, 224 N.J. Super. 72 (Law Div. 1987).
The defendant was stopped in North Plainfield for a motor vehicle violation within 1,000 feet of a grammar school on Saturday, September 19, 1987, at approximately 1:25 a.m. because her left rear red tail lens was missing. A search of her vehicle revealed a paper bag containing 30 vials of "crack" *433 cocaine and she was charged with possession of cocaine with intent to distribute within 1,000 feet of school property in violation of N.J.S.A. 2C:35-7.
She contends that the statute is facially unconstitutional or, in the alternative, can be sustained only if we read into the statute a requirement that it applies only if the defendant intended to actually distribute drugs within 1,000 feet of school property or a school bus. Persons who are merely passing through the 1,000 foot zone, she contends, cannot constitutionally be subjected to the statute.
She argues that the statute, if read literally, permits the conviction of persons who possess drugs which they intend to distribute, not within 1,000 feet of a school, but miles away as, for instance, the occupants of an airplane who unwittingly fly 500 feet above school property, or the occupants of a moving automobile who unknowingly pass within 1,000 feet of a school bus on a highway or country road. These situations, it is asserted, do not create potential harm to school children and demonstrate that the statute is too broad.
First, she asserted that the statute is vague, but offers no facts to support this claim. Generally, a criminal statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited conduct. Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Town Tobacconist v. Kimmelman, 94 N.J. 85, 118 (1983) stated that:
[v]ague laws are unconstitutional even if they fail to touch constitutionally protected conduct, because unclear or incomprehensible legislation places both citizens and law enforcement officials in an untenable position ... and fail to provide officials with guidelines sufficient to prevent arbitrary or erratic enforcement ... A law is vague as a matter of due process if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. [citations omitted.]
But what is vague or unclear about this statute? Indeed, it is difficult to conceive of a statute which is more precise. It makes absolutely clear that the possession of certain drugs, *434 including cocaine, with intent to distribute within 1,000 feet of school property or a school bus is prohibited. The elements of the offense are clearly stated and persons of common intelligence cannot reasonably differ as to its meaning or application. The statute establishes clear guidelines which informs the public what is prohibited and instructs the police what is permitted, thereby deterring arbitrary and discriminatory law enforcement. The statute is not vague.
The defendant next argues that the statute is overbroad. In determining whether a statute is overbroad a court must ascertain whether it reaches a "substantial amount of constitutional conduct," State v. Lee, 96 N.J. 156, 164 (1984), and extends further than is necessary to accomplish a legitimate state purpose. In other words if the statute reaches not only illegal conduct, but also constitutionally protected conduct it is overbroad. Generally, the protected conduct involves First Amendment rights and the overbreadth challenge is made to prohibit the infringement of one's freedom of expression. See Town Tobacconist v. Kimmelman, supra 94 N.J. at 125-6. But what constitutionally protected right could possibly be infringed by this statute? The possession of illegal drugs with intent to distribute is prohibited anywhere and anytime. The statute does not punish lawful activity; indeed, it does not even create a new offense. It simply provides for an additional offense if the offense continues into a zone which is within 1,000 feet of school property or a school bus. The overbreadth challenge is rejected.
It is next contended that the statute unconstitutionally negates the requirement of a mens rea by providing that it shall be no defense that the actor was unaware that the prohibited conduct took place while on or within 1,000 feet of any school property. N.J.S.A. 2C:35-7. However, a mens rea is not mandated under all circumstances. For example, State v. Des Marets, 92 N.J. 62 (1983) upheld the Graves Act requiring a mandatory prison sentence if a firearm was possessed during *435 the commission of a crime even though there is no evidence that the defendant ever intended to actually use the firearm. The court said:
the actor's state of mind was meant to be irrelevant [by the legislature because] the possession of a firearm presents definable dangers ... [and] the mere presence of guns at the scene of crimes [creates dangers] that this statute seeks to end. [at 69-70.]
Similarly, State v. Tischio, 107 N.J. 504 (1987) held that even though there is no evidence that a defendant was under the influence of alcohol at the time he was actually operating a motor vehicle, he may nonetheless be convicted of drunk driving "when a breathalyzer test ... is administered within a reasonable time after the defendant was actually driving his vehicle [which] reveals a blood-alcohol level of at least 0.10%." Id. at 506. When construing statutes courts are admonished to adopt "pragmatic and flexible interpretations necessary to effectuate the legislature's regulatory aims." Id. at 512. The Supreme Court reasoned that the legislature is obviously greatly concerned with the carnage on our highways caused in great part by drunk drivers and intended to impose an easily determinable test to identify them.
The genesis of this statute may well be 21 U.S.C. § 845a, enacted October 1984, which provides that any person who distributes a controlled dangerous substance within 1,000 feet of a "public or private elementary or secondary school" shall be subject to an enhanced penalty. At least two United States courts of appeal have upheld the statute and rejected arguments that a person could be convicted even though she was unaware of the proximity of the school or there was no evidence that she intended to actually distribute drugs within 1,000 feet of a school. United States v. Falu, 776 F.2d 46 (2d Cir.1985) and United States v. Holland, 810 F.2d 1215 (D.C. Cir.1987), cert. den., ___ U.S. ___, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987). Both cases emphasized that the intent of Congress was to shield school children from the violent and dangerous narcotic criminal milieu and held that the method adopted by this statute to accomplish that purpose is reasonable and fair.

*436 Congress evidently intended that dealers and their aiders and abettors bear the burden of ascertaining where school are located and removing their operations from those areas or else face enhanced penalties. [United States v. Falu, 776 F.2d at 59.]
We are satisfied that the legislature had a legitimate and reasonable basis for the elimination of a mens rea and may do so to achieve a proper legitimate purpose.
The defendant argues that the statute violates the equal protection clause in the Fourteenth Amendment of the federal constitution by arbitrarily creating disparate treatment for the same offenses based simply on the place of the offense, i.e., one punishment for those who possess drugs with intent to distribute beyond 1,000 feet of school property and a different punishment for those who commit such offense within 1,000 feet of school property or a school bus. The effect of the statute, she asserts, is to punish more severely conduct on one side of the street than it does similar conduct on the other side of the street by randomly drawing a theoretical line at an arbitrary distance from school property. Generally, laws which proscribe or diminish fundamental rights based solely on race, political affiliation, sex, right to vote, right to travel, or any other fundamental rights are inherently suspect and may violate the Equal Protection Clause. State v. Fearick, 69 N.J. 32, 38-40 (1976). But here we are not dealing with any fundamental rights because there is no fundamental right to possess cocaine with intent to distribute. The issue is whether there is a rational relationship between the hazards of permitting persons to possess illegal drugs with intent to distribute within 1,000 feet of school property or a school bus and the means adopted by the legislature to achieve that goal. The legislature has made it clear that the purpose of the statute is not only to protect school children by shielding them from direct drug sales, but also to immunize them while they are within 1,000 feet of school property or a school bus from the indirect effects of drug dealings, such as observing drug sales, being exposed to the violence which frequently accompanies drug possession, having to contend with and frequently observe *437 discarded drug paraphernalia, and suffering the fear and emotional harm which could arise for being in the vicinity of drug dealers, all of which create an unsafe environment for school children. In other words, the purpose of the legislature was to shield school children from the potential interference with their education from exposure to drugs that could arise from being in close proximity to the criminal drug milieu. And the fact that drug dealings occur when school is not in session does not diminish the potential harm created for school children when they are on or near school property or a school bus whether or not school is in session. It may well be that the statute goes too far by reaching occupants of airplanes or of automobiles which pass moving school buses, but neither is the situation here. Those problems will be addressed when those fact situations arise. Under the circumstances of this case, the statute does not violate the equal protection clause of the Fourteenth Amendment.
Defendant next argues that mandatory imprisonment with a parole ineligibility period constitutes cruel and unusual punishment in violation of the federal and state constitutions because the penalty is disproportionate to the offense, citing State v. Smith, 58 N.J. 202, 212 (1971). As stated in Coker v. Georgia, 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977) a penalty will be deemed to be unconstitutional if it does not make a measurable contribution to acceptable goals of punishment or is grossly disproportionate to the severity of the crime. As stated above, the purpose of this statute is to reduce the availability of drugs for school children and to lessen the exposure of school children to the criminal drug milieu. N.J.S.A. 2C:35-1.1(c) expressly stated that it is:
the policy of this state to afford special protection to children from the perils of drug trafficking and to ensure that all schools and areas adjacent to school are kept free from any distribution activities.
Surely these are rational findings and determinations that cannot seriously be questioned in this day and age. See New Jersey v. T.L.O., 469 U.S. 325, 399, 105 S.Ct. 733, 741, 83 *438 L.Ed.2d 720, 733, (1985). If the police power of a municipality may validly be exercised to prevent the sale of ice cream within 200 feet of a school, Mister Softee v. Mayor and Council of Hoboken, 77 N.J. Super. 354 (Law Div. 1962), then a fortiori, it could punish the possession of illicit drugs with intent to distribute within 1,000 feet of school property or a school bus. The punishment is not grossly disproportionate to the severity of the crime and does not constitute cruel and unusual punishment.
The defendant next argues that N.J.S.A. 2C:35-12 is unconstitutional because it coerces a plea of guilty by requiring the imposition of a minimum mandatory sentence of three years (except if less than 25 grams of marijuana are involved):
[u]nless the defendant has pleaded guilty pursuant to a negotiated agreement or, in cases resulting in trial, the defendant and the prosecution have entered into a post-conviction agreement which provides for a lesser sentence of period of parole ineligibility. N.J.S.A. 2C:35-12.
The defendant relies upon United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) which declared unconstitutional that portion of the Federal Kidnapping Act which required that a defendant shall be punishable by death if the victim was not liberated unharmed and if the verdict of the jury shall so recommend. The act was held to unfairly penalize the assertion of the constitutional right of a trial by jury because if a defendant pled guilty he could not be subjected to the death penalty, but if he asserted his right to trial by jury and was found guilty, he could suffer the death penalty.
Our legislature obviously concluded that plea bargaining is a fact of life and may be utilized as a tool to enforce laws relating to the illegal distribution of drugs in or near school property. The statute does not coerce a plea of guilty but merely recognizes and permits plea bargaining. And as was made clear in Corbitt v. New Jersey, 439 U.S. 212, 218-220, 99 S.Ct. 492, 497-8, 58 L.Ed.2d 466 (1978):
... there is no per se rule against encouraging guilty pleas. We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea. The plea may obtain for the defendant `the possibility or *439 certainty ... [not only of] a lesser penalty than the sentence that could be imposed after a trial and a verdict of guilty ...' but also of a lesser penalty than that required to be imposed after a guilty verdict by a jury ... `While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'  and permissible  `attribute of any legitimate system which tolerates and encourages the negotiation of pleas'. [citations omitted.]
The defendant can exercise his right to a trial by jury just as any other defendant and, if he is convicted, he cannot be subjected to a greater punishment than is permitted by the statute.
The defendant next argues that N.J.S.A. 2C:35-12 violates the separation of powers clause of the state constitution because it delegates to the prosecutor the authority to fix sentences in drug cases when a mandatory sentence must be imposed. The statute permits the defendant and prosecutor in such cases to enter into a plea agreement or post-conviction agreement and:
the court at sentencing shall not impose a lesser term of imprisonment, period of parole ineligibility or fine than that expressly provided for under the terms of the plea or post-conviction agreement.
The effect of this statute, the defendant asserts, is to strip the court of its sentencing power and compel the court to accept and rubber stamp sentencing agreements made by the prosecutor. The New Jersey Constitution, Art. III, para. 1 provides that:
The powers of the government shall be divided among three distinct branches, the legislative, executive and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belong to either of the others, except as expressly provided in this Constitution.
It has always been left unsaid whether the authority of a court to impose sentences can be abridged by the other branches of government. Put another way, is sentencing the exclusive function of the court? State v. Kovack, 91 N.J. 476, 484 (1982) has held that:
Neither party [i.e., the prosecutor and defendant] can bind the court; neither has an absolute right to have the sentence conform to the specific terms of the agreement.
*440 On the other hand the legislature can, to some degree, restrict the sentencing power of a court. Thus, the legislature may constitutionally enact mandatory minimum sentence laws when necessary in the public interest. State v. Des Marets, 92 N.J. at 80-81. But can the legislature constitutionally enact laws to fix the precise sentence which the court must impose? Or, as defendant asserts this statute mandates, delegate to the prosecutor the power to fix sentences in drug cases requiring mandatory imprisonment which the court must impose?
Since 1975 prosecutors and defense counsel have been authorized to engage in discussions relating to pleas and sentences and disclose the agreement to the court. R. 3:9-3(a), et seq. The agreement has always been treated as a recommendation which the court can accept, in which event it could sentence the defendant to the plea agreement or anything more lenient, or "within its broad discretion, refuse to accept." State v. Kovack, 91 N.J. at 485. If the court determines that the sentence should be harsher the defendant has the right to revoke the agreement. R. 3:9-3(e). The prosecutor has no right to revoke the agreement no matter what sentence is imposed. This statute does not require the court to impose the sentence agreed upon, but it now vests the prosecutor with the similar right to revoke the agreement if the court decides to impose a sentence which is less than what the agreement provides. This presents no difficulties with respect to plea agreements, but it does with respect to post-conviction agreements.
As to plea agreements, if it is unacceptable to the court it can be rejected and the parties will have to either negotiate a new plea agreement or go to trial. If a new plea agreement acceptable to the court is negotiated, then the court will sentence the defendant in accordance therewith. And if the defendant either pleads guilty without a plea agreement or is found guilty by a jury, N.J.S.A. 2C:35-12 is not implicated and the court can impose whatever sentence it chooses. This is not significantly different than existed in the past except that now the court cannot impose a more lenient sentence if the prosecutor *441 objects. The statute does not compel the court to impose the sentence agreed upon and the ultimate sentence still remains to be fixed by the court.
However, the statutory requirement that the court shall not impose a lesser sentence than is provided for under the terms of a post-conviction agreement raises a serious constitutional question. Does this provision of N.J.S.A. 2C:35-7 violate the separation of powers clause of the state constitution? If there is such an agreement and the court concludes that it is not in the interest of justice, what is it to do? A more lenient sentence would run counter to the statute and a harsher sentence would violate the promise made to the defendant. How can the court reject the agreement and impose a sentence which it believes is fair? A solution is not readily apparent and it may well be that as to post-conviction agreements the statute is unconstitutional. However, this issue does not exist in this case so we will defer that issue until a later date. Except for this limited situation, we are satisfied that the statute does not delegate to the prosecutor the authority to fix sentences and does not violate the separation of powers clause in the state constitution.
Finally, the defendant argues that the statute violates the federal constitutional provision against double jeopardy because it provides that a conviction under this statute shall not merge with a violation for the possession of drugs with intent to distribute beyond 1,000 feet. See N.J.S.A. 2C:35-7. In other words, if the possession of drugs with intent to distribute commences beyond 1,000 feet of school property and continues to within 1,000 feet of school property, there are two separate offenses that do not merge, one for the possession of drugs with intent to distribute beyond 1,000 feet from school property, in violation of N.J.S.A. 2C:35-5, and the other for the possession for drugs with intent to distribute within 1,000 feet of school property, in violation of N.J.S.A. 2C:35-7. However, "there is no question but that the legislature is empowered to *442 split a simple, continuous transaction into stages, elevate each stage to a consumated crime, and punish each stage separately." State v. Davis, 68 N.J. 69, 78 (1975). The legislature clearly acted within its authority.
For these reasons we are satisfied that the statute passes constitutional muster and the motion to declare the statutes unconstitutional is denied.
NOTES
[1] The purpose of the statute was to impose more severe punishment on persons who possess drugs within 1,000 feet of school property or a school bus with intent to distribute. But, oddly, the statute may do just the opposite in some cases. For example, when the possession of cocaine in a quantity of five ounces or more with at least 3.5 grams of the pure free base drug with intent to distribute occurs more than 1,000 feet from school property it is a first degree offense punishable by mandatory imprisonment of between ten and twenty years and the court must impose parole ineligibility of between one-third and one-half of the sentence imposed. See N.J.S.A. 2C:35-5a(1), 2C:35-5b(1) and 2C:43-6a(1). But if that same offense occurs on or within 1,000 feet of school property or a school bus it is only a third degree offense punishable by mandatory imprisonment of between three and five years, and the court must impose parole ineligibility of between one-third and one-half of the sentence imposed, or three years, whichever is greater. See N.J.S.A. 2C:35-5a(1), 2C:35-7 and 2C:43-6(a)1.