229 N.J. Super. 459 (1989)
551 A.2d 1037
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
THERESA LEE OGAR, DEFENDANT-RESPONDENT.
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ALBERT J. LOMBARDI, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 1988.
Decided January 3, 1989.
*461 Before Judges PRESSLER, O'BRIEN and SCALERA.
Joseph Connor, Jr., Assistant Prosecutor, argued the cause for appellant, (Lee S. Trumbull, Morris County Prosecutor, attorney, Joseph Connor, Jr. on the brief).
Robert Seelenfreund, Assistant Deputy Public Defender, argued the cause for respondents, (Alfred A. Slocum, Public Defender, attorney, Robert Seelenfreund, of counsel and on the brief).
Cherrie Black, Deputy Attorney General, argued the cause for amicus curiae State of New Jersey, (W. Cary Edwards, Attorney General, attorney, Cherrie Black, of counsel and on the brief).
The opinion of the court was delivered by SCALERA, J.A.D.
These appeals involve construction of those provisions of the Comprehensive Drug Reform Act of 1986 (the Drug Act) which proscribe the distribution and possession of drugs within defined school zones in this State. Although the two indictments arise from markedly different factual patterns, the same legal issues are implicated and we therefore address them in this consolidated opinion.
Both defendants filed timely motions to dismiss the particular counts of the indictment returned against them. The crimes charged in these counts were based on a section of the Drug Act, codified as N.J.S.A. 2C:35-7, which defendants contend was violative of both the federal and state constitutions on the grounds of vagueness, overbreadth and double jeopardy. After hearing motions separately in each of the cases, the same trial judge dismissed counts three and four of the Ogar indictment as well as count four of the Lombardi charges for reasons explained hereafter. We granted the State's motion for leave to appeal in each case.
*462 For purposes of these proceedings the parties have agreed to the factual predicates for the indictments returned against each of the defendants.

I.
On August 29, 1987 at about 9:30 a.m., Theresa Lee Ogar visited an inmate at the Morris County Jail which is located within 1,000 feet of Morristown High School. During her visit, she left the jail in order to retrieve a pair of sneakers from her car. Upon reentering the jail, a corrections officer discovered two bags of heroin concealed inside the sneakers. A laboratory test revealed that "the two bags contained a trace amount of heroin and 0.01 grams of heroin." For purposes of this appeal, defendant acquiesces in the State's theory that she intended to smuggle the drugs into the jail.
Ogar was indicted for violating various provisions of the Drug Act provisions and more specifically in the third and fourth counts respectively, was charged with possession with intent to distribute heroin and attempted distribution of heroin "within 1,000 feet of any school property or school bus or while on any school bus" in violation of N.J.S.A. 2C:5-1 and 2C:35-7.
The trial judge concluded in that matter that, (1) that portion of N.J.S.A. 2C:35-7 punishing drug offenses within 1,000 feet of a school bus was unconstitutional on its face; (2) those counts of the indictment were fatally defective for charging the school-bus language in a case not involving a school bus; (3) the 1,000-foot criterion was constitutional as applied to the 1,000 foot distance from school property (as opposed to from a school bus); and (4) the statute was not intended to apply to offenses committed in a county jail, regardless of its proximity to a school. He therefore dismissed counts three and four of Ogar indictment.

II.
As to Albert J. Lombardi, the facts show that at about 5:30 a.m. on July 18, 1987, the Rockaway Township Police received *463 an anonymous tip that Stephen R. Kowalewski, Lombardi's codefendant, was selling drugs at Mt. Hope Products, Inc. in Rockaway Township. The tipster said that Kowalewski would be driving a blue Dodge pickup truck. Police set up a surveillance at that location, and observed Kowalewski drive away in the pickup truck with Lombardi riding as a passenger. The police officer followed the truck on its route for at least two miles and finally pulled it over in front of a public school. In his report the officer explained that he did not stop the truck earlier "because the road was wider at that point [in front of the school] and that it was simply the first good, convenient place to make a stop." For the purposes of his motion the defendant did not object to the trial judge's assumption that the officer had acted in good faith and was not motivated by any desire to maneuver "defendant into a school zone to zap him with an added charge."[1]
The officer discovered a stun gun on the front seat of the truck in addition to .07 grams of cocaine on defendant's person and .24 grams of cocaine in the truck. The search also revealed a can with a false bottom which contained 6.94 grams of cocaine and $600 in cash. The legality of the search leading to discovery of such evidence is not an issue on this appeal.
Lombardi and Kowalewski were indicted for various drug offenses and additionally, were charged in the third count with possession with intent to distribute cocaine "within 1,000 feet of any school property or school bus, or while on any school bus" in violation of N.J.S.A. 2C:35-7.
With respect to Lombardi's motion, the trial judge acknowledged the Legislature's power to enact such legislation resulting in the increase of criminal sanctions for drug offenses committed on or near school property in light of the special vulnerability of school children to the harmful impact of drugs. However, he then went on to require that "some reasonable *464 limitations" be "read into this statute" in order "to give fair and reasonable effect to the expressed intention of the legislature" which he identified as being "to protect school children from exploitation and abuse by drug distributors." The trial judge opined that otherwise enforcement of that law literally "would result in clearly frivolous or inappropriate or unfair results, having nothing to do with protecting school children." He characterized the Lombardi arrest as "a moving offense that has no relationship to the school property," and observed that such a fortuitous nexus could not have been intended by the Legislature to come within the drug law's sweep. Accordingly, he dismissed the third count charging Lombardi with violation of N.J.S.A. 2C:35-7.

III.
The State, represented by the Morris County Prosecutor's office, as well as amicus Attorney General, contends that the trial judge erred in construing N.J.S.A. 2C:35-7 to the effect that there has to be some "functional" or "sociological" relationship between the proscribed drug activity and the activities normally to be found in a defined school zone. We agree.
N.J.S.A. 2C:35-7 was enacted as part of the Comprehensive Drug Reform Act of 1987, which became operative on July 9, 1987. See Official Commentary to the Comprehensive Drug Reform Act 9 Criminal Justice Quarterly 147, 149 (1987). (Commentary). At the time of these offenses that section provided:[2]
Any person who violates subsection a. of N.J.S. 2C:35-5 by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog while on any school property used for school purposes which is owned by any elementary or secondary school or school board, or within 1,000 feet of any school property or school bus, or while on any school bus, is guilty of a crime of the third degree and shall, except as provided in N.J.S. 2C:35-12, be sentenced by the court to a term of imprisonment.... [N.J.S.A. 2C:35-7].
*465 A defendant violating this section is exposed to greatly increased penalties of incarceration and fines, the particulars of which are not now relevant. N.J.S.A. 2C:35-7. However, the requirement of an enhanced penalty provided by that section may be waived by negotiated agreement with the State. N.J.S.A. 2C:35-12.
The legislative purpose which prompted the enactment of the new drug law is well documented. The statute itself expresses that
It is also the policy of this State to afford special protection to children from the perils of drug trafficking, to ensure that all schools and areas adjacent to schools are kept free from drug distribution activities, and to provide especially stern punishment for those drug offenders who operate on or near schools and school buses, who distribute to juveniles, or who employ juveniles in a drug distribution scheme. [N.J.S.A. 2C:35-1.1c.]
Secondly, the Commentary, which is "part of the formal legislative history" of the act, Commentary at 148, contains the following relevant explanations of N.J.S.A. 2C:35-7:
This section, which is roughly modeled after federal law found at 21 U.S.C. § 845a, effectively creates a drug "safety zone" around schoolyards in recognition not only that children, who are often the targets of distributors, congregate there, but also that areas surrounding schools must be kept drug free if they are to serve as the primary medium for educating young people as to the dangers of drug use.
....
[T]his offense focuses entirely on the dangers associated with the infiltration of illicit drugs and drug trafficking activity into school safety zones. .. .
The protected school safety zone includes all school property including playgrounds and athletic fields, and further extends 1,000 feet in all directions (measured "as the crow flies") from the outermost boundary of the school grounds or campus, and not from the perimeter of the school building itself.... It does not matter in a prosecution under this section whether children were actually present or whether the school was in session at the time the offense occurred. Rather, this section is intended to create a permanent, 24-hour drug safety zone around schools, in recognition that children routinely congregate on school property and schoolyards before and after the normal school day, and during summer recess and other vacation periods.
It is not a defense to a prosecution under this section that the actor was unaware that he was distributing within a school zone; rather, as to this element, the defendant will be held strictly liable for his illegal acts occurring within a zone. It is thus incumbent upon drug traffickers to ascertain their proximity to schools and remove their illegal operations and activities from these specially protected areas, or assume the risk and stern consequences for their failure to do so.

*466 ... In recognition that school safety zones will encompass many private residences and premises, especially in urban areas, this section nonetheless does establish an affirmative defense where: (1) the charged offense occurred entirely within a private residence, (2) no juveniles were present during the commission of the offense, and (3) the offense did not involve distribution for profit. [Commentary at 157-158, emphasis supplied].
Concerning defenses, the act as originally adopted provided that, "It shall be no defense to a prosecution for a violation of this section that the actor was unaware that the prohibited conduct took place while on or within 1,000 feet of any school property." It also provided that,

It is an affirmative defense to prosecution for a violation of this section that the prohibited conduct took place entirely within a private residence, that no person 17 years of age or younger was present in such private residence at any time during the commission of the offense, and that the prohibited conduct did not involve distributing, dispensing or possessing with the intent to distribute or dispense any controlled dangerous substance or controlled substance analog for profit. The affirmative defense established in this section shall be proved by the defendant by a preponderance of the evidence. Nothing herein shall be construed to establish an affirmative defense with respect to a prosecution for an offense defined in any other section of this chapter. [N.J.S.A. 2C:35-7, emphasis supplied].
On June 28, 1988, after these alleged offenses had occurred, N.J.S.A. 2C:35-7 was amended to add (among other provisions not related to this appeal) that it shall not be a defense to a prosecution under this section that no juveniles were present on the school property at the time of the offense or that the school was not in session. (L. 1988, c. 44, § 3, effective June 28, 1988). The plain import of this part of the amendment codifies the legislative intent originally set forth in the Commentary quoted above. Thus, even before this amendment was passed, the Legislature intended that the act be applied regardless of whether the drug activity presented any immediate danger to school children in the zone.
In spite of these pronouncements the trial judge in Ogar insisted that N.J.S.A. 2C:35-7 was not intended to reach drug offenses committed
... inside a [county jail] building that has no functional relationship with the school area, is an incompletely [sic] different sociological environment that has no connection with the special evils that the legislature is trying to cope with, and it simply couldn't be that sensible people would seriously intend to make *467 what occurred here a special offense because of its likelihood of hurting school children.
* * * * * * * *
So I'm saying that I am reading the legislature's intent as being one which calls for judges to use discretion under the factual circumstances confronting us and I will rule that the distributions here do not come within the language of the statute.
He reasoned similarly that Lombardi's presence in the forbidden zone was merely the fortuitous result of the fact that the police could not safely pull him over until they reached the wider roadway in front of the school. He concluded therefore that Lombardi's presence in the zone bore no relationship to the legislature's intent to protect this special class of citizens.
However, the trial judge went wide of the mark in so concluding. Because of the clear legislative intent to create a "drug free zone," we agree with the State that the statute cannot be construed to condition a prosecution upon some "functional relationship" between the commission of an alleged drug offense and the protected zone. Rather the statute imposes a "bright line test" based strictly on distance. Aside from the private residence exclusion, it does not allow for any defense or exculpation based on the type of activity conducted in any building within the zone or the manner in which the offense happened to have occurred within the perimeters of that zone. Therefore, absent some asserted impropriety of law enforcement activity, any inquiry into the circumstances which occasioned a defendant's commission of a proscribed drug offense in that area is irrelevant. Simply put, if drugs are possessed with the intent to distribute, distributed or dispensed anywhere within the 1,000 feet zone of school property, the statutory proscription applies. Logically one must assume that no exceptions were legislatively intended other than that specifically provided and a court may not substitute its judgment for that of the Legislature in this regard.
Here the trial judge frustrated the Legislature's clear intent to create an inviolate zone extending 1,000 feet around school property free of drug distribution (or possession with intent to *468 do so). Designed to ensure that drug traffickers will stay away entirely from those areas, the statute imposes upon them the obligation to determine where the zones are located and to avoid them. Because the plain language of this statute indicates the legislative intent, Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 128 (1987) there is no need for any judicial construction. Vreeland v. Byrne, 72 N.J. 292, 302 (1977). Its meaning can "be gathered from the object and nature of the subject matter, the contextual setting, and the mischief sought to be eliminated as well as the proposed remedy." Market St. Mission v. Bureau of Rooming and Boarding House Standards, 217 N.J. Super. 56, 65 (App.Div. 1987), rev'd on other grounds, 110 N.J. 335, app. dism., ___ U.S. ___, 109 S.Ct. 209, 102 L.Ed.2d 201 (1988).
The words of the Drug Act establish a strict liability approach to society's drug problem which should be dealt with "aggressively" and "strict[ly]," and in recognition that the peculiar dangers to school children require "especially stern punishment" for drug offenders who operate near schools. N.J.S.A. 2C:35-1.1c.
Defendants seek support in the statutory exception for offenses not for profit "within a private residence," arguing that it constitutes explicit recognition by the Legislature of "the unfairness of applying this law to drug transactions that occur within private settings when no school children are present regardless of whether the offense was committed within 1,000 feet of a school." The short answer is, that regardless of whether another exception would make sense or is more compelling than the limited exception specifically allowed by the statute, the fact remains that the Legislature elected not to include any other exceptions. In such a situation, a court may not engraft onto a statute an exception not placed there by the Legislature. Had the Legislature intended to exclude locations having no clear connection to school children, it could have done so easily. "[W]hat the Legislature pointedly omits the courts will not supply," even though a judicially engrafted amendment *469 might serve what the court perceives to be a desirable result. Remedial Educ. & Diag. v. Essex Cty. Educ. Ser., 191 N.J. Super. 524, 528 (App.Div. 1983), certif. den., 97 N.J. 601 (1984).
Our determination today is consistent with the federal courts' construction of the cognate federal law, upon which N.J.S.A. 2C:35-7 was "roughly modeled." Commentary at 157. Like the New Jersey law, 21 U.S.C.A. § 845a(a) authorizes a mandatory minimum sentence for drug offenses committed within 1,000 feet of a school. Unlike N.J.S.A. 2C:35-7, however, the federal law contains no private-residence exception, and it does not create a separate offense. Rather, it is a penalty-enhancement statute.
In United States v. Jones, 779 F.2d 121 (2nd Cir.1985), cert. den. 475 U.S. 1031, 106 S.Ct. 1236, 89 L.Ed.2d 344 (1986), defendant argued that "the schoolyard statute," 21 U.S.C.A. § 845a(a), did not apply to him because his drug sale was made to an adult, at night, and in an indoor place (a bar) not frequented by school children. In rejecting this argument, the court pointed out that the statute's 1,000-foot proscription was unambiguous and did not require that the offender "directly" commit the conduct at which the act was aimed. Id. at 123. Rather, it was sufficient that the bar was located within the statutory zone. Ibid.
In United States v. Agilar, 779 F.2d 123 (2nd Cir.1985), cert. den. 475 U.S. 1068, 106 S.Ct. 1385, 89 L.Ed.2d 609 (1986), defendant made a street sale of heroin to an undercover officer at a place within 1,000 feet of a school. Defendant attacked 21 U.S.C.A. § 845a(a) on due process grounds, arguing that there was no rational basis for the statute's irrebuttable presumption that every sale of drugs within the stipulated radius has a detrimental effect on school children. The court disagreed:
... Whether or not each sale within the 1,000-foot zone, if not deterred, would have led to acquisition of drugs by school children, the proscription of sales within the environs of schools is a rational means of reducing the risk of easy availability that can lead to such acquisition. [779 F.2d at 125-126]
Accord, United States v. Cunningham, 615 F. Supp. 519, 520-521 (S.D.N.Y. 1985) (statute does not require direct endangerment *470 of children), and United States v. Nieves, 608 F. Supp. 1147, 1149 (S.D.N.Y. 1985) (statute creates a valid irrebuttable presumption that drug offenses within 1,000 feet of a school endanger school children; facts of the particular transaction are irrelevant). See also U.S. v. Holland, 810 F.2d 1215 (D.C. Cir.1987), cert. den., ___ U.S. ___, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987). (rejecting a claim that 21 U.S.C.A. § 845a was overinclusive to the extent that it applied to drug sales between adults, after school hours, and in private residences).
As previously noted the trial judge here also adjudicated the school-bus proscription of N.J.S.A. 2C:35-7 to be unconstitutional on its face notwithstanding that the parties conceded that the language was inadvertently included in the indictment and that the State did not seek to enforce that part of the statute against either defendant. While he was understandably irritated by the unexplained overbreadth in the language of the indictments and the practice of charging "boiler plate" and "multi-barrelled language of the statute" in indictments which he found to be violative of the principles of "fair charging," the trial judge rather precipitiously announced that he was "just going to dismiss and make you go back and charge with the thing you want to charge them with."
He then went further and undertook to address the asserted constitutional defects of the school-bus provision,
Now, certainly you prosecute him for distributing the drug, but you do not use this enhanced penalty because there is a bus driving down the street. That makes absolutely no sense. It's a moveable crime, it is not properly defined, I think on its face that it is an unconstitutional enactment because it's just, it's a floating crime that has no relationship to a real social evil that society can conscientiously and in a well defined way prohibit.
So it's absolute madness and people should not be charged with that kind of thing....
In doing so, however, he violated settled principles of judicial restraint by striking down a section of a statute which was not sought to be enforced in the case before him. It is well settled that the constitutionality of legislation should be considered only when indispensable to a resolution of the case; if the case *471 may be disposed of on another ground, the constitutional question should be passed. Vreeland v. Byrne, supra, 72 N.J. at 292. See also Schaad v. Ocean Grove Camp Meeting Association, 72 N.J. 237, 250-51 (1977), overruled on other grounds, State v. Celmer, 80 N.J. 405 (1979), cert. den., 444 U.S. 951, 100 S.Ct. 424, 62 L.Ed.2d 321 (1979). (holding that trial court's invalidation of an ordinance containing a total prohibition of driving on Sundays was "unnecessary and inappropriate").
The ruling here constituted just such a premature determination of the rights of some third parties who might someday be charged with having violated the disputed school bus provision. See Town Tobacconist v. Kimmelman, 94 N.J. 85, 99 (1983) ("we know of no doctrine that requires a court to consider and determine the validity of every hypothetical application of legislation when a pre-enforcement vagueness attack is involved"). The proper and appropriate time to entertain such a challenge to this particular provision is when someone is actually charged with violating it. See State v. Morales, infra, 224 N.J. Super. 72, 78 (Law Div. 1987).
While the State concedes that these counts "should have been drafted in a more artful manner," i.e. by omitting the school-bus language, there is nothing to suggest that inclusion of such language confused or misled defendants. State v. Boratto, 80 N.J. 506, 518-19 (1979). In such cases, it is not necessarily fatal that an indictment contains surplusage in the form of additional language which describes additional means or circumstances by which the offense was committed. State v. Silverstein, 41 N.J. 203, 207 (1963); State v. Siebert, 126 N.J. Super. 534, 537 (App.Div. 1974). Instead of dismissing the counts, excision of the surplusage should have been accomplished by an amendment pursuant to R. 3:7-4, State v. Siebert, supra, 126 N.J. Super. at 537, or on defendant's application under R. 3:7-3(a). In re Tuch, 159 N.J. Super. 219, 225 (App. Div. 1978).
Finally, we summarily reject the assertion by defendants that the 1,000 foot proscription is unconstitutionally vague on *472 its face or, as applied, is violative of constitutional due process and equal protection. Suffice it to say that we agree substantially with the decisions rendered in this regard in Law Division cases which have rejected similar attacks: State v. Brown, 227 N.J. Super. 429 (Law Div. 1988); State v. Rodriguez, 225 N.J. Super. 466 (Law Div. 1988); State v. Morales, supra.
Parenthetically, we note that defendants have filed no cross-appeal which would have implicated the trial judge's determination upholding the constitutionality of the 1,000-feet-from-school-property standard (which was not reflected in the judgment). Thus, even if there were a judgment appealable on the constitutional ground as now asserted, the defendants would be precluded from raising this point as an issue. See Franklin Discount Co. v. Ford, 27 N.J. 473, 491 (1958); State v. Pescatore, 213 N.J. Super. 22, 30 (App.Div. 1986), aff'd o.b. 105 N.J. 441 (1987) (the failure to cross-appeal precludes a respondent one from attacking an adverse portion of a judgment).
For the reasons indicated the counts of both indictments which were dismissed are hereby reinstated and the cases remanded for further proceedings consistent with this opinion.
NOTES
[1] We express no opinion concerning what legal ramifications might result from any knowing or intentional police activities to the contrary.
[2] In June 1988 this section was amended as will be discussed later in this opinion.