**Ronnie E. POLK, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 79S00–9612–CR–748.

Supreme Court of Indiana.

July 23, 1997.

Harold E. Amstutz, Lafayette, for Appellant.

Pamela Carter, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellee.

BOEHM, Justice.

Defendant Ronnie E. Polk was convicted of possession of at least three grams of cocaine within 1000 feet of school property, a Class A felony,[1] and of possession of a controlled substance within 1000 feet of school property, a Class C felony.[2]  The jury also found Polk to be a habitual offender.  The trial court imposed concurrent sentences of thirty years and four years respectively on the possession charges.  The cocaine conviction was enhanced by thirty years for the habitual offender finding.  Because ten years of the sentence was suspended, Polk received a total term of fifty years imprisonment.  In this direct appeal, Polk presents two issues for our review:

I.   Does the enhancement for possession within 1000 feet of school property apply to an occupant of a moving vehicle in that zone?

II.  Was there sufficient evidence that Polk possessed cocaine?

We affirm.

### Factual and Procedural Background

In the early morning hours of July 5, 1995, the defendant was a passenger in a moving vehicle that was stopped by police for a traffic violation in Lafayette, Indiana.  Lafayette Police Officer Brian Hayworth obtained the driver's consent to search the car and found drug paraphernalia in a "black zipper type pouch" that was lying on the dashboard.  Based on his experience, Hayworth believed the items in the pouch were used for smoking crack cocaine.  Polk denied ownership of the paraphernalia and maintained that he did not smoke cocaine.  One of the other officers on the scene asked Polk if he would submit to a drug test, and Polk said he would.  Hayworth obtained Polk's consent to search a "fanny pack" Polk had been wearing around his waist.  A pipe and a "beige like rock substance" that later tested positive for cocaine were found in the fanny pack.  Polk was arrested and patted down for weapons.  During this search, several tablets were found in a pocket of Polk's pants that later proved to be a Schedule IV controlled substance (diazepam).  Hayworth also felt a fist-sized item in the rear crotch of Polk's pants.  Believing that the item was not a weapon, Hayworth did not attempt to remove it.  The defendant was handcuffed

---

1.  IND.CODE § 35–48–4–6 (Supp.1995).

2.  IND.CODE § 35–48–4–7 (Supp.1995).

and then placed in the rear seat of Hayworth's police car. He was left alone there for four to five minutes. It is undisputed that these events took place less than 1000 feet from Highland Christian School in Lafayette.

Officer Hayworth next drove Polk to a nearby hospital for a drug test and accompanied Polk into a hospital bathroom to monitor Polk as he gave a urine sample. At that point, Hayworth determined that the fist-sized item was no longer in Polk's pants or anywhere on his person. After releasing Polk to the custody of the Tippecanoe County Jail, Hayworth checked the rear seat cushion of his police car for the missing object. A plastic bag containing several rock substances that were subsequently determined to be crack cocaine was found under the rear seat cushion. The bag was approximately the same size as the item Hayworth had felt earlier in Polk's pants. Hayworth testified that (1) he had a steady practice of checking at the beginning of each shift for items or contraband under the rear seat cushion of his police vehicle; (2) he had done so on the night of Polk's arrest; and (3) he had found nothing. Between this initial search by Hayworth and the time Polk was placed in the back seat, no other suspects or police officers had been in the rear seat area. By design the rear doors of Hayworth's police vehicle were locked at all other times because the car was used to transport prisoners. Hayworth testified that the rear seat area where the cocaine was found was not accessible from the front seat or the outside unless the officer opened the rear doors himself.

■ A jury convicted Polk and he appeals. We have jurisdiction under Indiana Appellate Rule 4(A)(7).[3]

## I. Enhancement for Possession Near School Property

Polk challenges the enhancement of both of his convictions for possession within 1000 feet of a school. Possession of cocaine is ordinarily a Class D felony, but possession of three grams or more of cocaine within 1000 feet of school property is a Class A felony. IND.CODE § 35–48–4–6 (Supp.1995).[4] Possession of a Schedule IV controlled substance is also ordinarily a Class D felony, but it is elevated to a Class C felony if the possession occurs within 1000 feet of school property. IND.CODE § 35–48–4–7 (Supp.1995). The jury found that both of these enhancements were supported by the evidence.

Polk maintains that the legislature did not intend the enhancement to apply to a passenger in a moving vehicle that is stopped by police for a traffic violation within the 1000-foot zone. Polk claims not to challenge the enhancement's purpose or constitutionality. Rather, he argues that the enhancement as applied here does not advance the statute's underlying objective of protecting school children from the effects of drugs, and produces absurd and unintended results. Polk essentially asks us to construe the school-zone enhancement to apply only to cases of drug possession in which the possessor distributed the illegal substance near school property. Polk contends this is a reasonable limitation that must be read into the enhancement for it to be consistent with due process of law, although he provides no authority for this proposition other than simply citing the Fifth and Fourteenth Amendments to the United States Constitution. Polk argues that possible consequences of a literal application of the statute include enabling police to determine the class of felony for which the defendant may be prosecuted by initiating traffic

---

3. We lack jurisdiction over this case as a direct appeal because the fifty-year sentence was not "greater than" fifty years imprisonment for a single offense. IND. CONST. art. VII, § 4; *Huff v. State*, 440 N.E.2d 465 (Ind.1982), *transferred to Huff v. State*, 443 N.E.2d 1234 (Ind.Ct.App.1983). However, rather than further delaying its resolution by transferring the case back to the Court of Appeals, we exercise our inherent authority to issue a ruling on the merits. *Wiseman v. State*, 521 N.E.2d 942, 943 (Ind.1988), *reh'g denied.*

4. In 1996, the General Assembly amended Indiana Code § 35–48–4 to apply the 1000–foot enhancement to family housing complexes as well as schools. 1996 Ind. Acts, P.L. 65, §§ 11–17. Because those amendments do not affect our analysis today, we refer throughout this opinion to the 1995 version of Chapter 4 that was in effect at the time of the crimes in this case.

stops near school property, and prosecution of drug possessors who happen to be passengers on aircraft flying over school property. Finally, Polk maintains that the enhancement does not reasonably inform average people that they will be subject to such severe consequences for possessing drugs while stopped for a traffic violation in a school zone.

The State responds that our recent decision in *Walker v. State,* 668 N.E.2d 243 (Ind. 1996), *reh'g denied* resolves this issue conclusively against Polk. *Walker* addressed whether the school-zone enhancement of the dealing in cocaine statute, Indiana Code § 35–48–4–1(b)(3), required proof of any mens rea to obtain a conviction. We held that the school-zone element of that offense was a strict-liability enhancement requiring no proof that the defendant knew he was dealing cocaine within 1000 feet of a school. We agree with Polk that *Walker* does not speak directly to his point today. He does not contend that the statute requires intent. Rather, he argues that it should not be literally applied to facts such as presented here. However, for the reasons set forth below, we reject Polk's arguments to restrict the application of the enhancement.

### A. *Background cases*

Other cases, like *Walker,* provide useful background but are not dispositive of Polk's contentions. In *Morse v. State,* 593 N.E.2d 194 (Ind.1992), *reh'g denied,* we upheld application of the school-zone enhancement against constitutional attack. There, the defendant, without specifying the source of the constitutional challenge, contended that applying the enhancement to a conviction for dealing in cocaine was "unconstitutional" absent some showing that children were present at the time the transaction took place. *Id.* at 197. We concluded that because children were often present on school grounds even when school was not in session, the General Assembly was justified in not requiring "the difficult proof as to whether children were actually present at the time a drug transaction occurred." *Id.*

In *Reynolds/Herr v. State,* 582 N.E.2d 833 (Ind.Ct.App.1991), defendant Herr was con-

victed of dealing and possession of cocaine, both within 1000 feet of school property. She had sold cocaine to a police informant inside her trailer home, which was located less than 300 feet from an elementary school. Herr challenged the constitutionality of the school-zone enhancement on equal protection grounds. Drawing on federal case law construing a similar federal statute, the Court of Appeals upheld application of the enhancement and ruled that it was neither overbroad nor underinclusive. The enhancement was not overbroad because "[t]he consequences of such transactions inevitably flow from inside the dwellings onto the streets and contribute directly to the violent and dangerous criminal milieu [the legislature] sought to eliminate in the proximity of schools." *Id.* at 839 (internal quotation marks and citation omitted). And nothing required the legislature to apply the enhancement to all drug transactions taking place around children; thus it was not underinclusive. The court also concluded that the enhancement's increased penalties for drug offenders was rationally related to the legitimate legislative goal of protecting children from the perils of drug trafficking.

*Williford v. State,* 571 N.E.2d 310 (Ind.Ct. App.1991), *trans. denied by Williford v. State,* 577 N.E.2d 963 (Ind.1991) addressed the issue we eventually conclusively resolved in *Walker:* whether the defendant must know he or she was within 1000 feet of school property to be convicted under the enhancement. There the defendant sold marijuana to an undercover police officer in a tavern that was located near an elementary school. In reaching the same result as *Walker,* the Court of Appeals reasoned that the defendant's argument

ignores the legislative intent to create a "drug-free zone" around the schools. A dealer's lack of knowledge of his proximity to the schools does not make the illegal drug any less harmful to the youth in whose hands it may eventually come to rest. Nor does the fact that the transaction occurred at a time and place where minors are unlikely to be present ensure that the narcotics will find their way out of the drug-free zone before they find their way into the bookbags, lockers and pockets

of our schoolchildren. The intent of the legislature is clear: those who choose to deal drugs in the vicinity of our schools do so at their own peril.

*Id.* at 313 (quotation marks in original).

### B. *Constitutionality and proper construction of the school-zone enhancement*

Polk's constitutional argument appears to have two prongs: (1) under these facts the enhancement lacks a rational relationship to a legitimate state objective; and (2) the enhancement as applied to him did not provide fair notice of what conduct was prohibited. Although Polk styles his argument in due process terms, the "rational connection" of a statute is frequently grounded on the Equal Protection Clause of the Fourteenth Amendment. *See, e.g., United States v. Campbell,* 935 F.2d 39, 44–45 (4th Cir.1991) (construing federal school-zone statute), *cert. denied,* 502 U.S. 929, 112 S.Ct. 348, 116 L.Ed.2d 287. In any event, we join the virtually unbroken line of authority upholding school-zone enhancements of controlled substance violations against various constitutional challenges.

■ The legislature has created separate crimes for dealing in cocaine and possession of cocaine. *Compare* IND.CODE § 35–48–4–1(a)(1) *with* IND.CODE § 35–48–4–6(a). The same statutory framework exists for dealing in and possession of a Schedule IV controlled substance. *Compare* IND.CODE § 35–48–4–3(a)(1) *with* IND.CODE § 35–48–4–7(a). The school-zone enhancement applies to all four offenses. Polk was charged only with possession. In considering Polk's arguments, we must read the possession enhancement in pari materia with the parallel provisions for dealing in cocaine or a Schedule IV controlled substance. *Sanders v. State,* 466 N.E.2d 424, 427–28 (Ind.1984). We agree with the Court of Appeals that the "violent and dangerous criminal milieu" created by drug dealing and possession is a sufficient rationale to render this legislative policy constitutional. *Reynolds/Herr,* 582 N.E.2d at 839. The opinions of this Court are filled with tales of drug possession and dealing that spun out of control and erupted into violence. The conclusion is inescapable that the General Assembly believed that possession of cocaine or a Schedule IV controlled substance near a school, distinct from any effort to distribute them there, presented its own dangers to children. In short, it is within the legislature's prerogative to determine that a drug-free zone deters possible spillover effects, and to provide enhanced penalties for controlled substance violations in proximity to schools. The enhancement is rationally related to a legitimate legislative objective.

■ Polk's statutory construction argument amounts to a request for an exception for drug-possessing motorists who pass through a school zone but whose activities do not endanger children under the facts of the particular case. The legislature has determined that the enhancement is appropriate to deter violations. Because that judgment is rational, we cannot write Polk's requested exception into the statute by judicial fiat. Moreover, where the General Assembly intended to make dealing or intent to distribute an element of a drug crime, it did so explicitly. Possession of cocaine with intent to deliver is a Class B felony, IND.CODE § 35–48–4–1(a)(2), while mere possession is a Class D felony. IND.CODE § 35–48–4–6(a). Possession of, and possession with intent to deliver, a Schedule IV controlled substance are Class D and Class C felonies respectively. *Compare* IND.CODE § 35–48–4–7(a) *with* IND. CODE § 35–48–4–3(a)(2). And dealing in either illegal substance is codified separately from the possession offenses. *Compare* IND. CODE § 35–48–4–1(a)(1) *with* IND.CODE § 35–48–4–3(a)(1). Polk's proposed construction of the school-zone enhancement would effectively eviscerate the distinction among possession, possession with intent to deliver, and distribution, in disregard of the clear legislative intent to differentiate the three.

Polk maintains that if we rule against his position police will wait to pull over suspected possessors of drugs until their cars are within 1000 feet of a school. However, the enhancement is triggered by possession within the zone, whether or not the defendant is pulled over within the zone. It is the act of entering the zone, and not the police action of pulling the defendant over, that triggers the

enhancement. Nothing forces drug offenders to drive within the drug-free zone created by the legislature. To the contrary, they pass there at their own peril and in jeopardy of their own penal interests. *Walker* settled that drug offenders do not have to know that their activities are taking place near a school to be convicted under the school-zone enhancement. *Walker*, 668 N.E.2d at 244–45. They are on notice of the location of their crimes. Literal application of the enhancement to extreme cases—for example, a subway or airplane passenger—is not before us today.

■ Polk's challenge on grounds of lack of clarity is equally flawed. It suffices to say that Polk's case is fairly, indeed explicitly as a matter of plain language, covered by the statute. The school-zone enhancement, far from being unconstitutionally vague, quite clearly communicates to drug offenders a bright line rule as to what conduct is proscribed. Thus a federal constitutional challenge on this ground is meritless. *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (to satisfy Due Process Clause of Fourteenth Amendment, penal statute must define offense in manner that enables ordinary people to understand what conduct is prohibited).

The constitutionality and application of school-zone enhancements has received detailed consideration by commentators and courts. Legal challenges, made under a wide range of theories, have been almost uniformly rejected. *See generally* Tracy A. Bateman, Annotation, *Validity, Construction, and Application of State Statutes Prohibiting Sale or Possession of Controlled Substances Within Specified Distance of Schools*, 27 A.L.R. 5th 593 (1995); William G. Bates, Annotation, *Validity and Construction of 21 USCS § 860 Enhancing Penalty for Drug Distribution if Offense Occurs Within 1,000 Feet of School, College, or University*, 108 A.L.R. Fed. 783 (1992).[5] In turning back these claims, many courts have observed that a school-zone statute, rather than outlawing constitutionally protected conduct, merely attaches a greater penalty to an illegal activity—here drug possession—than would normally be imposed. Because there is no right to possess illegal drugs, a school-zone enhancement implicates only the propriety of the elevated punishment and not the validity of the underlying proscription. Noting this difference, *United States v. Holland*, 810 F.2d 1215, 1220–22 (D.C.Cir.1987), *cert. denied*, 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 construed a "due process" challenge to a school-zone enhancement as being in effect a claim that the enhanced penalty violated the Eighth Amendment ban on cruel and unusual punishment. If viewed as an Eighth Amendment issue, the choice of penalty is accorded substantial deference and is presumed to be valid. *Id.* at 1221. Whatever the proper description of Polk's claim, we conclude that Indiana's school-zone enhancement passes the more demanding standard of rational basis review he urges us to apply.[6]

We have identified only two cases that considered the claim that a school-zone enhancement does not apply, or is unconstitutional when applied, to a person in a moving vehicle that is stopped inside the zone for a traffic violation. Both have rejected Polk's

5. Despite the numerous state and federal decisions addressing constitutional challenges to school-zone enhancements in drug-related prosecutions, the Supreme Court of the United States has never granted certiorari to review any of these claims.

6. Polk's argument that application of the enhancement here is irrational due to failure in this case to advance its underlying policy—protecting children—is a variant of a similar claim we already addressed and rejected in *Morse*. 593 N.E.2d at 197. Because federal due process does not "require that the means chosen by [the legislature] to deal with a problem score a notable success in every application of the statute," *United States v. Agilar*, 779 F.2d 123, 125 (2d Cir.1985), *cert. denied*, 475 U.S. 1068, 106 S.Ct. 1385, 89 L.Ed.2d 609 (1986), children need not be present for the enhancement to apply. This particular attack on school-zone statutes has been nearly uniformly rejected by a number of state and federal courts construing application of the enhancement to drug offenders. *See also United States v. Crew*, 916 F.2d 980, 983 (5th Cir.1990) (rejecting claim that school-zone enhancement violated due process where children were not present during drug transaction); *United States v. Nieves*, 608 F.Supp. 1147, 1149–50 (S.D.N.Y.1985) (same); *Dawson v. State*, 329 Md. 275, 619 A.2d 111, 117–18 (1993) (collecting cases).

position. *State v. Ogar*, 229 N.J.Super. 459, 551 A.2d 1037 (A.D.1989) (passenger); *State v. Brown*, 227 N.J.Super. 429, 547 A.2d 743 (1988) (driver). In sum, the school-zone enhancement applies to both of Polk's possession convictions as a matter of statutory construction, and application under the facts of this case does not violate Polk's right to due process of law or equal protection under the Fourteenth Amendment to the United States Constitution. The prophylactic goal of a drug-free school zone is a legitimate legislative objective. The enhancement provides clear notice of what conduct is prohibited and is rationally related to protecting the welfare of children.

## II. Sufficiency of the Evidence

■ Polk contends there was insufficient evidence to support the possession element of his conviction for possession of at least three grams of cocaine within 1000 feet of school property. IND.CODE § 35–48–4–6 (Supp.1995). Specifically, Polk emphasizes the undisputed fact that his hands were handcuffed behind his back in the rear seat of the police car. Polk argues that the State did not prove he was capable under these circumstances of getting rid of any cocaine concealed on his person and that no one could have accomplished this feat of dexterity while handcuffed. According to Polk, the State proved only that he was in the back of Officer Hayworth's patrol car and not that he possessed cocaine on the night in question. In response, the State contends that under the facts of this case the jury could have inferred that Polk possessed the cocaine that was found in the police car after he was arrested.

In reviewing a sufficiency of the evidence claim, we do not reweigh evidence or assess the credibility of witnesses. A conviction will be affirmed if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Wooden v. State*, 657 N.E.2d 109, 111 (Ind.1995). The jury could have concluded that Polk possessed the cocaine found under the rear seat cushion. One of the investigating officers testified that handcuffs do not restrain all arm movement.

Particularly limber people can move their hands and arms substantially even while handcuffed behind the back. And if credited, Officer Hayworth's testimony all but precluded any other explanation for the presence of cocaine in the back seat of his patrol car. It was not there when Hayworth started his shift and Polk was the only suspect to have occupied the back seat before the cocaine was found. The car was locked at all other times.

Sufficiency challenges have been rejected under similar facts. *See, e,g., Boarman v. State*, 509 N.E.2d 177, 179–80 (Ind.1987). Although decisions like *Boarman* often involved suspicious behavior by the defendant that tended to support an inference of possession, this is not a factual predicate in every case. Here the defendant was left alone in a police car for as long as five minutes. The jury could have concluded that during this time Polk stashed the cocaine under the back seat. Finally, Polk directs us to cases addressing what must be shown to establish *constructive* possession of an illegal drug or controlled substance. This line of authority does not apply today because the evidence showed that Polk either actually possessed the cocaine found in the police car or did not possess it at all.

## Conclusion

We affirm the convictions and sentence.

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Justice, concurring.

I believe we decided the dispositive issue in this case when we held in *Walker v. State*, 668 N.E.2d 243 (Ind.1996), that illegal drug possession within 1000 feet of a school is a strict liability offense. If the defendant need not know that he or she is within 1000 feet of a school to commit the offense, it makes no difference whether he or she does so standing on a street corner or riding in an automobile. Although I dissented in *Walker*, 668 N.E.2d at 248 (Sullivan, J., dissenting), I consider the interpretation of the *mens rea* requirement of Ind.Code § 35–48–4 *stare de-*

*cisis* for purposes of this opinion and for that reason concur.