**David L. COLLINS, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

No. 585S204.

Supreme Court of Indiana.

March 22, 1988.

Robert Canada, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant David L. Collins was found guilty by a jury in the Warrick Superior Court of the crime of Delivery of a Controlled Substance for which he received a sentence of seventeen (17) years, and Possession of a Controlled Substance for which he received a term of three (3) years, said sentences to be served concurrently. Collins raises two issues for our consideration in this direct appeal:

1. trial court error in admitting evidence of other crimes; and

2. error in convicting and sentencing Collins for both delivery and possession of a controlled substance.

The facts show that on February 2, 1986 Michael Robert Hoover, an Indiana State Trooper was contacted by David Hyatt, a confidential informant. Hyatt stated that Debbie Thomas, Collins' girlfriend, had called and said Collins wanted to see them to talk about drug dealing. Hoover assumed his undercover identity of "Jerry Cooper" and he and Hyatt went to Collins' business, T & C Arcade, at about 8:05 p.m. Collins was not present at the time, but Thomas, who was working at the Arcade, called him and he arrived about forty-five minutes later.

Collins stated to Hoover and Hyatt that he knew they were dealing in drugs and suggested they join forces. He would provide the methamphetamine for the two, and they would confine their sales to the Boonville area so as not to compete with Collins.

After Collins claimed to have five grams of the drug available, Hoover asked the price of two grams. As a show of good faith, Collins agreed to sell two grams for the low price of $180 offered by Hoover. He gave a plastic container to Thomas, who took Hoover into the back room where he chose eight (8) ¼ gram packets and gave her the $180. She then returned four packets to the container and gave it and the money to Collins. The evidence showed

that a chemical analysis of the substance in the packets was methamphetamine, a controlled substance.

## I

Collins claims the trial court committed reversible error by admitting into evidence over his objection testimony concerning Collins' previous possession of marijuana. This testimony was brought out in Collins' cross-examination and State's exhibits 4, 5, 6, and 7, which were 69.2 grams of marijuana seized by federal officers in December, 1982.

It requires a rather complex recitation of facts to discern Collins' defenses. He claims he did not use or deal in any illegal drugs as he abhorred their use, particularly by children, and that Debbie Thomas was in truth the dealer who sold the drugs to Hoover and Hyatt. Collins claims he permitted her to keep her drugs there and make transactions on the premises although he did not approve of it. He further asserts he was entrapped and that he was actually working as a federal agent since he had been enlisted by federal agents to help investigate and uncover drug trafficking in the area. He maintains his work with the federal agents began upon his arrest by federal officers in December, 1982. Then, federal officers had obtained a search warrant and found in Collins' apartment several illegal guns and ammunition, and also found in their search the packets of marijuana in question here. Collins claimed he did not know the guns he had were illegal, that he collected them for his own interest and did not deal in illegal firearms, and that he told the officers he would be willing to cooperate with them in any way to uncover any illegal activity regarding guns, drugs, or any such thing in the area. He advised the federal officers then, and testified in court, that he had already launched his own investigation into illegal drug trafficking in the county because he disliked such activities, particularly because they affected young people, and was therefore well informed on the subject and could be helpful to them. He also hoped this would help him in a plea bargain with the federal government. In the instant case, federal officers testified regarding his employment as an informant; this testimony greatly conflicted with Collins' version. They stated at the time of his arrest in December, 1982, Collins did offer to help them as an informant but they entered into no relationship with him at that time. They stated they told him only that they were always willing to accept information and would be glad to hear anything he had to tell them. They further told him they do not deal in drugs because they are the branch of federal police who deal with firearm and tobacco violations, but they would be glad to put him in touch with personnel in the drug enforcement agency who might be interested in what he knew about drug trafficking. Collins did not enter into any plea bargain arrangement with the federal authorities on his gun violation charges until some time in April, 1983. This was about two months after the offense with which he is presently charged. They testified they had no arrangement with him in February, 1983, the time the instant crime was committed. There was evidence that in April and May, 1983, Collins worked with some of the federal officers in gun control and drug enforcement in an attempt to locate and identify certain individuals they were interested in but there was no evidence he became an official informant for them. The officials said at that time they advised Collins, as they do all of their informants, that working for them does not give them license to commit crime and they will not be protected if they do commit a crime. They particularly stated police officers at every level make it a practice never to sell drugs as part of their investigations and undercover work. Testimony indicated they do not sell, they buy. The only activity an officer takes part in during his investigation is to buy drugs which he obtains as evidence and immediately tags and places them in the evidence room for use in criminal prosecution.

After Hoover and Hyatt testified regarding the dealings and purchase made from Collins in February, 1983, Debby Thomas testified as a witness for the State pursuant to a plea agreement. She stated she did take part in the drug sale as Hoover and Hyatt had testified. She stated she was working for Collins at the time. She testified she personally delivered the drugs to Officer Hoover on Collins' instruction and in the presence of Hoover gave the remaining four packets of methamphetamine and the $180.00 to Collins.

Collins then took the stand on his own behalf and denied Debby Thomas' version, claiming she was, in fact, the dealer. He then testified at great length how he himself investigated drug trafficking in the county with a view to stamping it out. He recounted the service of the search warrant on him by federal officers which netted the guns and ammunition. He told of the federal gun violations which resulted, and explained his relationship with these officers whereby he became a federal agent working with and for them to investigate and stamp out drug dealing in the area. On cross-examination he was asked if the federal officers confiscated any other items in addition to the illegal weapons and ammunition. Over objection, Collins stated the officers found and took some small amounts of marijuana. He stated he had two very small amounts of marijuana in medicine bottles that he kept in his apartment to be available to anyone who visited him and might wish to smoke it. He claimed he never smoked it and had it only for the use of his guests. He also stated there were a couple of packets of marijuana he took away from "kids" at the Arcade because he disapproved of young people's use of drugs. This was his explanation of the source of the marijuana federal officers found.

On rebuttal, the State called Officer Marvin Dale Heilman, who identified State's Exhibits 4, 5, 6, and 7 as packets of marijuana found in Collins' apartment during the execution of the federal search warrant. He testified they contained 69.2 grams of marijuana.

Citing *Choctaw v. State* (1979), 270 Ind. 545, 387 N.E.2d 1305, Collins claims the admission of evidence of other criminal activity was error since this evidence is not admissible to show guilt. He asserts such evidence may be admitted to show intent, motive, purpose, identification, or common scheme or plan and the evidence of his other criminal activity does not do any of those things. Collins also claims the admission was error in that evidence of prior drug use is not relevant to establish a common scheme or plan to deal in drugs. *Riley v. State* (1986), Ind., 489 N.E.2d 58, 61; *Gaston v. State* (1983), Ind.App., 451 N.E.2d 360, 363. However, Collins only objection at trial to the admission of this evidence was that it was irrelevant and outside the scope of direct examination.

The State contends the court properly ruled on Collins' objections and, further, properly admitted the evidence in view of Collins' entrapment defense. In order to refute an entrapment defense, the State must introduce evidence which tends to show the level of police activity did not persuasively affect the free will of the accused and the accused was predisposed to commit the offense. *Gossmeyer v. State* (1985), Ind., 482 N.E.2d 239, 241; *Henrichs v. State* (1983), Ind., 455 N.E.2d 599, 600. Entrapment exists when a government agent or someone working for the agent persuades the defendant to commit the crime charged. *Hudgins v. State* (1983), Ind., 443 N.E.2d 830, 832. The question of entrapment is one of fact and must be determined by the jury after weighing the evidence presented to them. This court reviews the question as we review all other matters of sufficiency; we neither reweigh the evidence nor judge the credibility of witnesses. *Gossmeyer*, 482 N.E.2d at 241; *Hudgins*, 443 N.E.2d at 832. We conclude the trial court did not abuse its discretion in permitting the testimony and the exhibits into evidence. Collins contends that he was employed by federal officers and induced by them to commit the crime with

which he is here charged and/or that he is immune from prosecution since he was a federal agent while the crime was committed. He particularly uses to his advantage this arrangement with the federal officers which began with the raid and subsequent arrest on the gun violation charges. This opened the door for the State to show that, at the time of the raid by the federal officers, Collins had in his possession 69.2 grams of marijuana and much knowledge about illegal drug trafficking in the area. This showed a predisposition to commit this crime and refute the entrapment and/or immunity defense. Because Collins opened the door, the trial court properly admitted this testimony and evidence.

## II

Collins claims the trial court erred by entering judgment of conviction and sentencing him for both dealing in a controlled substance and possession of a controlled substance. In *Cyrus v. State* (1978), 269 Ind. 461, 381 N.E.2d 472, *cert. denied*, 441 U.S. 935, 99 S.Ct. 2058, 60 L.Ed.2d 664, defendant was convicted of both possession and delivery and this court found error since a sale necessarily includes possession. *Id.* at 465, 381 N.E.2d at 474. *Cyrus* further held before a trial court may enter a judgment upon multiple counts, the facts must be independently supportable, separate and distinct. Where judgment is entered and sentencing is had on both a greater and a lesser charge, the lesser charge should be vacated. *Lindsey v. State* (1976), 264 Ind. 198, 341 N.E.2d 505, 509.

The State's only response on this issue is that Collins sold two grams of methamphetamine to the trooper and retained an additional gram after the sale, which showed a possession of methamphetamine other than that which was sold. This would seem to be a good argument if that is what the State's case was based on. In a thorough search of the record, we find only one reference to this subject and it is

in the prosecutor's final argument to the jury. In discussing the two charges with the jury, the prosecutor first told the jury Count I was charging a delivery of a controlled substance:

> And he delivered that to another person here in Warrick County on that date, and that's against the law. And we have to prove that to you. We also charged, as we talked in *voir dire*, that, you understand, to deliver something, you have to possess it. And we believe that the evidence in this case has established that.

Thus, it appears the State's theory is that it was permissible to convict and sentence Collins for both selling and possessing the same drugs. As noted previously in *Cyrus*, this is error.

We therefore remand this cause to the trial court with instructions to vacate judgment of conviction and sentence for possession as charged in Count II of the information. The trial court is in all other respects affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.