**Charlotte M. REYNOLDS/HERR, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 87A04–9008–CR–00394.

Court of Appeals of Indiana, Fourth District.

Dec. 11, 1991.

John Wissner, Boonville, for appellant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Charlotte Reynolds Herr (age 41) was convicted by a jury, of Count I—Possession of Cocaine Within 1,000 Feet of School Property, a Class B felony,[1] and Count II—Dealing in Cocaine Within 1,000 Feet of School Property, a Class A felony.[2] Herr received a 20 year sentence for Count I and a concurrent 50 year sentence for Count II. The court suspended 20 years of the sentence and ordered her to be placed on reporting probation for 20 years after her release from prison. She raises five issues on appeal which we rephrase and consolidate as follows:

I. Whether the court erred in admitting evidence of prior uncharged drug dealing.

II. Whether a sufficient chain of custody was established to admit the cocaine into evidence.

III. Whether portions of IC 35–48–4–6 and IC 35–48–4–1, which respectively elevate the possession and dealing in cocaine to higher level felonies when the act is committed within 1,000 feet of school property, are constitutional.

IV. Whether Herr's convictions of dealing in cocaine and the lesser included offense of possession of cocaine can both stand.

We reverse and remand with instructions to vacate judgment of conviction and sentence for Count I—possession, because it is either a lesser included offense of Count II (dealing in cocaine), or because it was based on possession of a substance (allegedly cocaine) which was not placed into evidence and was not identified by either expert testimony based upon chemical analysis or testimony of someone, including a lay witness testifying from personal experience, sufficiently experienced with the drug, indicating that the substance was indeed an illicit drug. *See Moon v. State* (1990), Ind.App., 560 N.E.2d 76; *McConnell v. State* (1989), Ind.App., 540 N.E.2d 100, 103. We affirm on all other grounds.

FACTS

The facts most favorable to the verdict reveal that Carl Overstreet, who was working as an informant for the Indiana State Police, told Trooper Robert Neal that he had spoken to Joey Bradshaw (an acquaintance of Overstreet who had previously purchased drugs from Herr) who agreed to take Overstreet to buy cocaine from Herr in Boonville, Indiana. On March 17, 1989, Neal and Trooper Paul Andre searched Overstreet and his car, gave him $290 in marked money and hid a microphone on his body. While the officers maintained surveillance, Bradshaw entered Overstreet's car. Bradshaw directed Overstreet to a trailer which was located in the Rolls Trailer Court across the street from the Logo Elementary School. The trailer was located 187 feet from the edge of the school property and 266 feet from the school building.

Bradshaw introduced Overstreet to Herr. Overstreet asked her if she had cocaine for sale. She removed a plastic baggie from her purse and told Overstreet that it contained 2 grams of good cocaine. Herr gave the baggie to Overstreet. He then asked her how much it had been diluted and gave her $200.

While Herr was getting the baggie from her purse, Overstreet saw another baggie in her purse. He asked her how much cocaine was in the second baggie. She replied that there was one gram, but that it was not for sale. Overstreet then asked her if she could get more. She made a phone call and told him she could not get more at the present time. Overstreet said in a March 28, 1989, written statement (given to Trooper Neal), which was given to the jury, that Bradshaw had assured him

---

1. Ind.Code 35–48–4–6.

2. IC 35–48–4–1.

that she was a good connection because Bradshaw had purchased drugs from her before.

The officers then followed Overstreet as he drove to a service station. While there, Overstreet gave Bradshaw a portion of the cocaine as payment for having set up the buy. Overstreet then left Bradshaw at the service station. The officers then followed Overstreet to their original meeting place outside of Boonville where he turned over the baggie. The officers searched him again and he gave them the remaining $90 of buy money. The officers told Overstreet that they disapproved that he had given some of the cocaine to Bradshaw. Trooper Neal conducted a field test on a portion of the contents of the bag. A chemist conducted tests and confirmed that the baggie contained cocaine.

Additional facts will be added as necessary.

## DECISION

### ISSUE I—ADMISSION OF EVIDENCE OF PAST DRUG DEALING

Herr argues on appeal that the court erred in admitting State's Exhibits 4 and 7, which contained evidence of uncharged drug dealing. The court granted her Motion in Limine, ordering the State not to present any evidence of her alleged prior drug dealing or any other prior conduct which was allegedly illegal.

State's Exhibit 4 is Overstreet's written statement which he gave to Trooper Neal on March 28, 1989. In the last sentence of that statement Overstreet stated that Bradshaw had told him he had previously purchased drugs from Herr. Herr did not object to the admission of this exhibit at trial.

State's Exhibit 7 was a tape recorded statement made by Bradshaw to Detective Marvin Heilman on October 17, 1989. In addition to the events of March 17, 1989, Bradshaw also stated that Herr had told him that she had dealt a lot of cocaine and crank. Herr objected to the admission of that part of the tape. The court overruled

the objection and the State played the whole tape for the jury.

■ It is settled law that a party waives any objection to the admission of evidence if a contemporaneous objection was not made at trial, even if the court had made a pre-trial ruling on the admissibility of the evidence. *Lenoir v. State* (1987), Ind., 515 N.E.2d 529. Herr has waived any error in the admission of Exhibit 4—Overstreet's written statement—because she did not object to its admission at trial. *Id.*

■ Furthermore, our supreme court has held that "[r]eversal may not be predicated on the erroneous admission of evidence when evidence of the same probative effect is admitted without objection." *Fozzard v. State* (1988), Ind., 518 N.E.2d 789, 792. Herr did not object to the admission of Overstreet's statement (Exhibit 4) regarding what Bradshaw had told him about Herr's prior drug dealing; therefore, the admission of Bradshaw's statement about her prior drug dealing is not reversible error. *Id.*

■ Moreover, evidence of uncharged crimes may be admitted, in the discretion of the trial court, in order to prove intent, motive, purpose, identity or common scheme or plan. *Bartruff v. State* (1988), Ind.App., 528 N.E.2d 110. In *Bombe v. State* (1988), Ind., 525 N.E.2d 336, our supreme court found that the admission of uncharged acts of drug dealing was not reversible error where the defendant attacked the veracity of the informant who made the buy and denied that he was the source of the drugs.

In the instant case, Herr denied that she was the source of the cocaine. Her attorney questioned witnesses, at trial, about the possibilities of: 1) Bradshaw having concealed the drugs on his person; 2) Overstreet having had the drugs on his person or in his car and the officers missing the drugs when they searched him; and 3) Overstreet having gotten the cocaine from someone else in the trailer. Therefore, Herr's identity as the source of the cocaine was at issue and the court could, in its discretion, admit evidence of other cocaine

dealing by Herr in order to prove that she was the source of the cocaine.

## ISSUE II—CHAIN OF CUSTODY

■ Herr argues that the State did not present sufficient evidence of an adequate chain of custody in order to have the cocaine properly admitted into evidence. We disagree.

■ In order to establish a sufficient chain of custody, the proponent of fungible evidence need only provide evidence that strongly suggests the whereabouts of the evidence at all times. *Russell v. State* (1986), Ind., 489 N.E.2d 955. Reasonable assurances must be provided that the evidence passed through various hands in an undisturbed condition. *Id.* A defense argument which merely raises the possibility of tampering does not make the chain of custody inadequate. *Id.*

In the instant case, Trooper Neal and laboratory personnel took several precautions with the cocaine in order to avoid tampering. When Overstreet gave Neal the baggie which contained the cocaine, Overstreet wrote his informant number on the baggie and Neal initialed it. Neal used a portion of the baggie's contents for a field test. He then placed the baggie inside a larger plastic bag which he marked with the date, time, his name, the police case number and the location at which the buy was made. The same identifying marks appeared on State's Exhibit 13 (the baggie of cocaine) when it was admitted into evidence. Neal then took the baggie to a temporary storage locker at the State Police Post in Evansville. Access to the locker was restricted to a civilian evidence handler and the laboratory commander.

Fredricka Laux, a civilian chemist for the Indiana State Police, testified that she received the sealed unopened bag from her evidence clerk. She opened the bag by cutting the bottom in order to avoid Trooper Neal's seal. After performing tests on the contents of the bag, she sealed the bottom with red evidence tape and wrote her initials, her employee number, and the date on the seal. At trial she testified that her seal was intact.

Neal testified that before attending the trial, he drove to the Indiana State Police Post at Evansville. While he was there Sergeant Greg Oeth got the bag from the safe in the laboratory and signed it out to Neal. The bag was in Neal's possession until he identified it at trial. Neal testified that the bag was in the same condition as when he left it at the laboratory except for the red evidence tape on the bottom. These procedures provided reasonable assurances against substitution, mishap, and tampering. *Id.*

■ Moreover, an evidence vault log (State's Exhibit 5) and a property record (State's Exhibit 6) provided additional assurances against substitution, mishap, and tampering. Herr argues that these records are hearsay and do not qualify under the business records exception to the hearsay rule. We disagree.

■ Our supreme court summarized the business records exception to the hearsay rule, as follows:

"An exhibit qualifies under the business records exception to the hearsay rule when the sponsor of the exhibit shows that it is part of the records kept in the routine course of business and placed in the record by one authorized to do so who had personal knowledge of the transaction represented by the entry. The exception does not mandate that the sponsor of the exhibit personally made it, filed it, or had first-hand knowledge of the transaction represented by it." (citation omitted).

*Perry v. State* (1989), Ind., 541 N.E.2d 913, 918. Furthermore, it is presumed that entries in records which are kept in the usual course of business were made by one who had a duty to make the entries and personal knowledge of the transaction represented by the entries, unless there is a showing to the contrary. *Lyons v. State* (1987), Ind., 506 N.E.2d 813.

Indiana State Police Chemist Laux testified that the property record (State's Exhibit 6) was kept in the ordinary course of business by other State Police employees to track the location of items submitted to the lab. She also identified the evidence vault

log (State's Exhibit 5) as a record kept in the ordinary course of business by other laboratory personnel in order to track the progression of a piece of evidence through the lab. Accordingly, these records were properly admitted under the business records exception to the hearsay rule. *Id.;* *Perry, supra.*

The records track the cocaine sample from the time Neal brought them to the Post. The property record shows that Neal put the bag in the temporary locker on March 17, 1989. The property record shows that Bill Schaeffer took the bag out on March 22, 1989, and placed it in the evidence vault. Laux testified that she received the bag from the evidence handler on March 31, 1989. Herr claims that there was no testimony identifying Schaffer or his purpose for handling the cocaine. Trooper Neal testified that Bill Schaeffer was a civilian evidence handler who was one of two people able to take evidence out of the locker. The jury could infer that he took the bag from the temporary locker and immediately placed it in the evidence vault to await testing.

Herr claims that even if with all of the testimony and the records (if they were properly admitted) there was still an insufficient chain of custody because Overstreet had asked for two grams of cocaine and Laux testified that the sample she tested weighed only .6 grams. She claims that this proves tampering or substitution. We disagree.

The variance in weight was accounted for by the testimony of Overstreet and of Troopers Neal and Andre. Andre testified that buyers typically receive a smaller amount than what is represented by the seller. Overstreet gave some of the cocaine to Bradshaw. Neal used a small portion of the cocaine for a field test.

The testimony and the police records strongly suggest the whereabouts of the cocaine at all times. *See Russell, supra.* Therefore, the chain of custody was sufficient for the cocaine to be admitted into evidence. *Id.*

## ISSUE III—CONSTITUTIONALITY OF STATUTES ELEVATING THE FELONY CLASS FOR POSSESSION OR DEALING NEAR SCHOOL PROPERTY

■ Herr argues that the enhancement of the offenses under Ind.Code 35–48–4–1 and 35–48–4–6 due to the proximity of the alleged delivery and possession to school property is unconstitutional. Herr contends she has been denied equal protection of the law. She argues that these statutes are over-broad and under-inclusive. We disagree with her contentions.

Ind.Code 35–48–4–6 states that possession of less than three grams of cocaine becomes a Class B felony rather than a Class D felony when a person possesses the cocaine "in or on school property or within one thousand (1,000) feet of school property or on a school bus." Ind.Code 35–48–4–1 states that dealing in cocaine becomes a Class A felony rather than a Class B felony when a person delivers the cocaine "in or on school property or on a school bus."

The constitutionality of these provisions is a case of first impression in Indiana; however, the federal appellate courts have upheld a similar federal statute. *See, e.g., United States v. Pitts* (9th Cir.1990), 908 F.2d 458; *United States v. Cross* (6th Cir. 1990), 900 F.2d 66; *United States v. Holland* (D.C.Cir.1987), 810 F.2d 1215. The federal statute, 21 U.S.C. § 845(a), allows for the penalty to be doubled when the distribution or possession with intent to distribute occurs in or on, or within one thousand feet of elementary or secondary school property.

In *Holland, supra,* the defendant presented the same arguments that Herr makes here. In response to the equal protection argument, the *Holland* Court stated that the classification for higher punishment does not involve a 'suspect class' or a fundamental right or even a legally protected activity; therefore, the statute will survive an equal protection challenge as long it rationally effectuates Congress' purpose for its enactment. *Id.* The court noted that the statute rationally effectuated the Congressional purpose of creating a

'drug-free zone' around schools, and lessening the risk that drugs would become available to school children. *Id.*

In addressing the defendant's arguments that the statute was over-inclusive and under-inclusive, the *Holland* court stated:

"Holland's argument that the statute is unconstitutionally over-inclusive because it applies to transactions that take place in nearby private dwellings misses the point. The consequences of such transactions inevitably flow from inside the dwellings onto the streets and contribute directly to the violent and dangerous criminal milieu Congress sought to eliminate in the proximity of schools. Enhanced punishment of these transactions is rationally related to the purposes of § 845a. Neither are we persuaded by the argument that the statute is impermissibly under-inclusive because it does not apply to drug transactions that take place near non-school playgrounds and recreation centers. Even if, as Holland suggests, drug transactions in or near these areas pose a greater threat to children, equal protection of the laws does not require Congress in every instance to order evils hierarchically according to their magnitude and to legislate against the greater before the lesser." (citations omitted).

*Id.* at 1219.

We find the reasoning of the *Holland* court to be persuasive. The legislative intent behind our statutes that enhance the offenses for possession or dealing near school property is similar to Congress' intent in enacting § 845(a). *See Holland, supra.* Our legislature, in drafting the enhancement provisions, intended "to afford special protection to children from the perils of drug trafficking, and to provide harsher penalties for those culprits determined to peddle drugs on or near school property." *Pridgeon v. State* (1991), Ind. App., 569 N.E.2d 722. Increased penalties for drug offenders who commit their offenses near school property is rationally related to this purpose. *See Holland, supra.*

■■ Herr argues that the statute is over-broad because there were no school children present in her trailer which was 187 feet from school property and 266 feet from the school building. We agree with the reasoning of the *Holland* Court which held that the federal statute was not over-inclusive because the effects of drug trafficking invade the school children's environment even when the drug offenses take place in a nearby house or when school is not in session. *Id.* Contrary to Herr's claim, equal protection does not require increased penalties for drug activity around school children in other places. *Id.*

For the foregoing reasons, we find that Herr's attack on the constitutionality of IC 35-48-4-1 and IC 35-48-4-6 fail.

## ISSUE IV—CONVICTION FOR BOTH POSSESSION & DEALING

■■ Herr argues that because possession of cocaine is a lesser included offense of dealing in cocaine she cannot be convicted of both. We agree.

■■ Herr is correct that possession of cocaine is inherently a lesser included offense of dealing in cocaine. *Frierson v. State* (1991), Ind.App., 572 N.E.2d 536. In *Frierson*, we stated that where the evidence only shows one possession of cocaine by the defendant, which is a material element of dealing in cocaine, the defendant cannot be convicted on both charges. *Id.*

We note that the State correctly argues that our supreme court has acknowledged that conviction on both charges is permissible when the defendant sells some drugs and retains others in his possession. *See Collins v. State* (1988), Ind., 520 N.E.2d 1258. However, in the instant case, we find that possession of cocaine in addition to the amount sold has not been proven.

■■ The State must produce evidence independent of an extra-judicial confession which establishes the *corpus delicti* or the extra-judicial confession will not be admitted into evidence and the conviction will not be upheld. *Dennis v. State* (1952) 230 Ind. 210, 102 N.E.2d 650. The rationale behind this requirement is to avoid convicting someone of a crime to

which he has confessed that never actually occurred. *Clark v. State* (1987), Ind.App., 512 N.E.2d 223. The *corpus delicti* may be established. by circumstantial evidence. *Id.*

Our supreme court has stated that when a defendant is charged with possession of a controlled substance, the defendant's extra-judicial statement identifying the substance, standing alone, is insufficient to show that the substance was actually contraband. *Warthan v. State* (1982) Ind., 440 N.E.2d 657. Furthermore, our supreme court has stated:

"When the drugs themselves are not placed into evidence and there is no expert testimony based on a chemical analysis, then there must be testimony of someone sufficiently experienced with the drug indicating that the substance was indeed a dangerous drug."

*Slettvet v. State* (1972), 258 Ind. 312, 315, 280 N.E.2d 806, 808. Clearly, if an informant or other individual experienced with a particular type of drug is testifying about the substance's identity that person must have sufficient contact with the substance in order to make the identification. *See Warthan, supra.*

Here, there was insufficient evidence, apart from Herr's extra-judicial admission to Overstreet, from which one may infer that the second baggie contained a gram of cocaine, to independently corroborate that she possessed additional cocaine. Overstreet testified that when Herr showed him the baggie -which she represented as containing two grams of cocaine, he also saw another baggie in her purse. He asked her about the baggies. *She said that she wanted to hold onto the second baggie which contained one gram, because it was all that she had at that time.*[3]

This uncorroborated extra-judicial statement by Herr is the only indication that the second baggie contained cocaine.[4] Overstreet testified that he did not handle the

---

3. Herr did not specifically state that the one gram substance in the second baggie was cocaine. The jury could have inferred that Herr was talking about cocaine, given the context of her extra-judicial statement. The following is an *excerpt of Overstreet's testimony about the* transaction with Herr, including Herr's comments about the second baggie:

"Q. So, she had told you that she had two (2) grams that she could get rid of?
A. Yes, sir.
Q. And did you talk with her anything about this cocaine?
A. Well, *I asked her if it was any good and if it was cocaine,* well, once I seen it, I could tell that it was.

\* \* \* \* \* \*

Q. When you asked the Defendant if it was good, what did she tell you?
A. She said yes.
Q. Did she let you examine it?
A. Yes.
Q. And did it appear to be cocaine to you when you examined it?
A. Yes, sir.
Q. .... Where did you get the cocaine to examine it?
A. From her. She handed it to me.
Q. Did you see where she got it from?
A. She had it in her purse, in like a purse.
Q. And, ah, how many baggies, or quantities, or units did you see?
A. *Well, I seen two (2) different baggies.*
Q. When you say 'baggies,' what are you referring to?

A. In the corners.
Q. Plastic bags?
A. Yes, plastic bags.
Q. And you saw two (2) of them?
A. Yes, sir.
Q. And, ah, what did she tell you regarding those baggies?
A. Well, she said the one contained two (2) grams *and the other one which was a gram, which she didn't want to get rid of at the time, because that was all that she had.*

\* \* \* \* \* \*

Q. How many baggies of cocaine did you physically handle?
A. One (1)...." (emphasis added).
(R. 384–387).

We note that the dissent's characterization of Overstreet's testimony could be construed as suggesting that Overstreet testified that he saw the contents of the second baggie and identified it as cocaine. Overstreet's testimony that "well, once I seen [sic] it, I could tell it was [cocaine]", referred to the two gram baggie of cocaine that was actually purchased.

4. Herr did not specifically state that she had committed the crime of possession of cocaine. Accordingly, her statement might be more properly termed an admission. *See* Black's Law Dictionary 68–69 (4th ed. 1968). However, in the instant case, her admission was tantamount to a confession because, from her statement, one could infer that she was admitting that she had committed all of the material elements of the crime of possession. *See* Black's Law Dictionary 369 (4th ed. 1968).

second baggie. He did not even testify whether he saw the contents of the second baggie.[5] Therefore, Overstreet's identification is insufficient. *See Warthan, supra.* Without additional independent corroborating evidence, conviction for possession of a second baggie of cocaine cannot stand. *See Dennis, supra.* Accordingly, Herr cannot be convicted of both dealing in cocaine and the lesser included offense of possession. *See Frierson, supra.*

 Herr contends that if only one conviction is set aside it should be the one for dealing because the jury returned its verdict on the possession count first, judgment was entered on Count I—possession first, and she was sentenced on Count I first. We disagree.

First, we note that Herr does not cite any authority for this proposition. Moreover, it is only logical that the verdict is going to be returned on the first count first and judgment is going to be entered on the first count first. Sentence is also going to be passed on the first count first. The fortuitous fact that possession was Count I and that verdict, judgment and sentencing took place moments before Count II does not change the rule in *Collins, supra,* that the lesser conviction should be vacated.

For the foregoing reasons, we reverse and remand with instructions to vacate judgment of conviction and sentence for Count I—possession—because it is either a lesser included offense of Count II (dealing in cocaine), or because it was based on possession of a substance (allegedly cocaine) which was not properly identified. We affirm on all other grounds.

HOFFMAN, J., concurring.

CONOVER, J., concurred in part and dissented in part with separate opinion.

CONOVER, Judge, concurring in part and dissenting in part.

While I concur in all other respects, I respectfully dissent from the majority's de-

termination the evidence was insufficient as to Herr's conviction for possession of cocaine.

While a defendant's extra-judicial incriminating statement standing alone is insufficient to show the substance was contraband, *Warthan v. State* (1982), Ind., 440 N.E.2d 657, Herr's statement to Overstreet she wanted to retain the second baggie containing a gram because it was all she had does *not* stand alone.[1]

As the majority notes, the state must produce evidence independent of the extra-judicial confession which establishes the *corpus delicti* or the extra-judicial confession will not be admitted into evidence, nor the conviction upheld. *Dennis v. State* (1952), 230 Ind. 210, 102 N.E.2d 650. This rule avoids the conviction of persons for crimes not committed. *Clark v. State* (1987), Ind.App., 512 N.E.2d 223. However, the *corpus delicti* may be established by circumstantial evidence, and it need not establish defendant's guilt beyond a reasonable doubt before the defendant's confession can be admitted. *Id.,* at 227.

In *Clark,* a police officer received a radio call regarding a car stuck in mud next to a highway and a person walking south toward Bloomington. The officer responded, finding defendant walking on the roadway less than a mile from the stuck car with the auto's keys in his pocket. The officer, smelling alcohol on the subject's breath, administered field sobriety tests and determined the subject was under the influence. The *Clark* court determined the *corpus delicti* was established from that evidence, independent of his statements to the police officer.

Likewise here.

Overstreet personally saw a second baggie, in substantially the same condition as the one he had just purchased from Herr in the identical spot in her purse from which she had produced the baggie she sold to him. The subsequent tests on the two

---

5. Even if Overstreet had seen the contents of the second baggie, sight alone is insufficient to identify certain drugs. *See Warthan v. State* (1982), Ind., 440 N.E.2d 657.

1. In the first instance, Herr did not object to Overstreet's testimony relating Herr's inferential statement that the second baggie contained cocaine. Thus, she has waived this issue.

gram baggie's contents conclusively established it contained cocaine. Further, Overstreet testified "well, once I seen [sic] it, I could tell that it was [cocaine]." (R. 384). The majority assures us Overstreet's statement identifying the substance in the baggies as being cocaine referred only to the two gram baggie in the last paragraph of its note 3. In this regard the majority errs. It cannot make such an assumption. One of the bedrock standards of review which binds this court is we do not weigh the evidence nor judge the credibility of witnesses on appeal. Such matters are solely for the trier of fact. *Everroad v. State* (1991), Ind., 571 N.E.2d 1240, 1244. The majority's assumption here clearly violates that principle.

The evidence is Overstreet saw two different baggies in Herr's purse, "one contained two (2) grams and the other one which was a gram, which, she didn't want to get rid of at the time, because that was all she had." (Compare with note 3, majority opinion.) Whether his statement identifying the substance as cocaine referred to only one, or to both baggies was a fact question for the jury, not this court. The majority here is simply weighing the evidence to support the conclusion it reaches as to *corpus delicti.*

The proximity of the two baggies in Herr's purse, the proof one contained cocaine, and Overstreet's independent identification of the substance as being cocaine sufficiently establishes the *corpus delicti,* in my opinion. Herr's confession/statement against interest was properly admitted for the jury to consider. Substantial evidence supports the judgment on that score, in my opinion.

For these reasons I dissent from the majority's determination the evidence was insufficient to sustain Herr's conviction of possession of cocaine.

