**Kennard R. BAILEY, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 89A04–9106–CR–210.

Court of Appeals of Indiana,
Fourth District.

Dec. 7, 1992.

Keith A. Dilworth, Richmond, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Kennard R. Bailey (Bailey) was convicted by a jury of selling Cocaine within 1000 feet of school property, a class A felony.[1]

1. Ind.Code 35–48–4–1 in pertinent part states: "A person who knowingly delivers cocaine, pure or adulterated, commits dealing in cocaine, a class B felony, except the offense is a class A felony if the person delivered the drug in or on

The jury was also instructed on the lesser included offense of selling cocaine, a class B felony. The trial court found mitigating circumstances existed because Bailey had no prior criminal record and sentenced Bailey to twenty (20) years incarceration, the minimum sentence.[2] Bailey claims that his trial counsel was ineffective and that fundamental error was committed by the trial court. He also argues that despite the fact that the Townsend Community Center rented a room to the Richmond School Corporation for use as a classroom, this does not make the Center "school property" for the purposes of the sentence enhancement provisions of the statute.

We affirm.

### FACTS

In December of 1989, the Richmond Police were using Tommy Lee Edwards (Edwards) as a confidential informant as part of an ongoing narcotics investigation. Edwards had agreed to cooperate with the police in exchange for consideration on a burglary charge. On December 18th, the investigation focused on the 800 block of North 12th Street in Richmond. Edwards was "wired" with both a tape recorder and a body transmitter and provided with buy money, the serial number of each bill being recorded. Edwards went to Norma Griffin's (Griffin) house at 838 North 12th Street, which is located 118 feet from the Townsend Community Center (Center). The Center was used by the Richmond Community School System as a classroom site for a G.E.D. program.

At the Griffin home, Edwards met Griffin and Teresa Davis (Davis) in a back room. Davis then sold Edwards a half of gram of cocaine in hard ("rock") form for fifty dollars ($50). Edwards then indicated he wanted to buy more, but wanted to deal direct with the supplier. A man called "Kenny," subsequently identified as Bailey, came to the back room. Davis produced another piece of "rock" cocaine, but Edwards said that the piece was too small. Bailey took another piece of "rock" out of a plastic bag and added it to the piece Davis had. Edwards then gave Bailey fifty dollars ($50) of the buy money. As Edwards left the Griffin house, using the body transmitter, he described a car with a Dayton, Ohio license plate to the police. The monitoring police officers received this information and put out a broadcast for the car. Edwards then met with the officers and gave them the cocaine that he had bought.

About thirty (30) minutes later, a patrol car spotted the Dayton, Ohio car and stopped it. Bailey was in the front passenger seat, Davis was in the back seat, and three other people were in the car. Bailey was arrested and searched. The police found the buy money in Bailey's left sock. They also found a plastic bag containing 4.7 grams of cocaine base, known as "crack," under the front passenger seat. The car was registered in Bailey's name.

### DISCUSSION

Bailey presents four issues for review which we restate as: 1) whether the trial court properly gave Bailey's tendered entrapment defense instruction; and 2) whether the Townsend Community Center is "school property" as the term is used in Ind.Code 35–48–4–1(b)(3).

### I— FUNDAMENTAL ERROR AND BAILEY'S TENDERED ENTRAPMENT DEFENSE INSTRUCTION

Bailey contends that it was fundamental error for the trial court to allow his trial counsel to insert the defense of entrapment in this case because entrapment indicated to the jury that he admitted the crime with which he had been charged. Bailey quotes this court in *Thomas v. State*

---

school property or within one thousand (1000) feet of school property."

**2.** I.C. 35–50–2–4. "Class A felony—A person who commits a class A felony shall be imprisoned for a fixed term of thirty (30) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances ..."

(1982), Ind.App., 442 N.E.2d 700, 701, where the court said:

"The 'fundamental error' doctrine permits a reviewing court to consider the merits of an improperly raised error if the reviewing court finds that 'the record reveals error so prejudicial to the rights of the Appellant that he could not have had a fair trial.' *Winston v. State* (1975), [165] Ind.App. [369], 332 N.E.2d 229, 231. Cases in which fundamental error has been found have two principal characteristics. (Citation omitted). First, the proceedings below viewed as a whole were void of any indicia of fairness. Second, the errors were the result of mistake or misconduct by the trial judge in the exercise of his affirmative duties."

*Id.*

Bailey argues that the entrapment instructions took away the presumption of innocence at his trial and admitted to the jury his guilt in a case where the entrapment defense was never raised. Bailey contends that this is fundamental error because the trial court has a duty to properly state all matters of law for the jury in its instructions. By giving this instruction, the trial court unfairly took the presumption of innocence away from Bailey. Therefore, Bailey argues that he meets the two pronged test of *Thomas, supra,* because the trial court erred in giving the entrapment instruction when Bailey clearly was not entitled to such an instruction.

We first note that the entrapment defense instruction was tendered to the trial court by Bailey. The instruction did not state that Bailey admitted the charged conduct nor did it take away the presumption of innocence. The instruction states:

### No. 14

"The defense of entrapment is defined by law as follows:

'It is a defense that the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and the person was not predisposed to commit the offense.

Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.'

When a defendant raises a defense of entrapment, the State has the burden of proving beyond a reasonable doubt that the defendant's conduct was not the product of law enforcement officials or their agents or, alternatively, that the defendant was predisposed to commit the crime."

In addressing this instruction, the trial judge stated:

"I am giving instructions and included in the instructions, at the defendant's request, is an entrapment instruction ... I want to clarify that I'm giving it primarily at the defendant's request."

Bailey is essentially arguing to this court that his trial counsel was ineffective because counsel requested the entrapment instruction and that the trial judge committed fundamental error by granting counsel's request.[3] Bailey offers no authority—nor do we find any—in support of this theory. The trial judge did not commit fundamental error in giving the instruction that Bailey requested.

## II— IS THE TOWNSEND COMMUNITY CENTER "SCHOOL PROPERTY" AS THE TERM IS USED IN I.C. 35–48–4–1?

 Bailey states that the trial judge erred by instructing the jury that "[s]chool property is property owned or rented by a school corporation." Bailey argues that the statute, I.C. 35–41–1–24.7, defines "school property" as a "building or other structure owned or rented by a school corporation." Thus, the trial court erred because "property owned or rented" is not the same as "building or other structure owned or rented." Bailey states that "school property" is a word of art having special meaning or a specific legal defini-

---

**3.** We wish to note that trial counsel's decision to seek an entrapment instruction is tactical in nature, and thus, is not considered ineffective assistance of counsel without the showing of a reasonable probability that the tactical decision altered the outcome of the case. *See,* e.g., *Mftari v. State* (1989), Ind., 537 N.E.2d 469, 473–474.

tion. The trial court has a duty to define words of art used in an instruction and failure to do so is error. Bailey cites *Abercrombie v. State* (1985), Ind., 478 N.E.2d 1236, 1239; *Smith v. State* (1981), Ind., 422 N.E.2d 1179; and *Martin v. State* (1970), 262 Ind. 232, 314 N.E.2d 60, in support of this argument. While Bailey is semantically correct, we find that this alleged error, if indeed error, is harmless.

Bailey then argues that the Center is not "school property" within the meaning of the statute. Bailey states that merely because the school corporation rents space from the Center for the Zero Base Program[4] does not turn the Center into school property; i.e., merely renting space for a school related program does not make the Center a school within the meaning of the statute. The Center also rents space to churches for programs—this fact does not make the Center a church. "Criminal statutes must be strictly construed against the State, and they may not be enlarged beyond the fair meaning of the language used." *Pridgeon v. State* (1991), Ind.App., 569 N.E.2d 722, 723, *trans. denied; Bond v. State* (1987), Ind., 515 N.E.2d 856; *Alvers v. State* (1986), Ind.App., 489 N.E.2d 83, 89, *reh'g denied, trans. denied.*

■■■ This court has reviewed this enhancement statute a number of times. The legislature's decision to enhance the sentence for drug offenses near a school is to afford special protection to children and to provide harsher penalties for those culprits peddling drugs near school property. *Pridgeon, supra,* at 724. We have held that the State is not required to prove that the defendant knowingly or intentionally was within 1000 feet of school property. *Williford v. State* (1991), Ind.App., 571 N.E.2d 310, *trans. denied* (defendant sold marijuana in a tavern that was within 1000 feet of the McIntosh Elementary School in Auburn). In discussing legislative intent, this court noted that Indiana's enhancement statute resembled the federal

"schoolyard statute," 21 U.S.C. § 845(a),[5] in that the clear legislative intent is to create drug free zones around schools. *Id.* at 313. It is sufficient for the State to prove that the defendant knowingly or intentionally delivered drugs and the offense occurred within 1000 feet of school property, regardless of the defendant's knowledge. *Id.*

We also have held that the enhancement statute applies to inchoate crimes, including attempts. *Berry v. State* (1990), Ind. App., 561 N.E.2d 832. In *Berry*, the defendant was convicted of attempting to sell marijuana cigarettes at South Putnam High School. In furtherance of the legislative intent to increase the severity of drug offenses occurring on school property, we held that an attempt to sell drugs was "fairly covered" by the statute. *Id.* at 836.

This court also has reviewed the constitutionality of this statute in *Reynolds/Herr v. State* (1991), Ind.App., 582 N.E.2d 833, 838–39. In finding that the statute was constitutional, we first noted that the legislative intent behind our statute enhancing the offense for dealing cocaine was similar to Congress' intent in enacting 21 U.S.C. section 845(a), the federal enhancement statute. *Id.* at 839. We found that in addition to the reason stated above, the intent was to provide harsher penalties for those culprits determined to peddle drugs on or near school property. *Id. citing Pridgeon, supra,* at 724. We agreed with the court in *United States v. Holland* (D.C.Cir.1987), 810 F.2d 1215, *cert. denied,* where the circuit court noted that the Congressional purpose was to create a "drug-free zone" around schools, and to lessen the risk that drugs would become available to school children. We also found that equal protection, an issue raised by Herr, did not require increased penalties for drug activity around school children in other places. *Reynolds/Herr, supra,* at 839.

We have followed "common sense usage" in determining that the term "school

---

4. The Zero Base program housed in the Townsend Community Center was an alternate opportunity for children who failed to succeed in a regular education setting; it involved grades K through 12 but primarily grades 7 through 12, or ages 11 through 18 or 19 or 20. R. 272.

Thus the ages involved were those that according to *Pridgeon, infra,* the legislature intended to protect.

5. Now 21 U.S.C. § 860(a).

property" as used in this statute does not include a college or university. *Pridgeon, supra,* (defendant, a student at Ball State University, sold marijuana in his college dormitory room). This court looked to the legislative intent "to afford special protection to children from the perils of drug trafficking," and found that to include colleges would result in an interpretation broader than intended by the legislature. *Id.* at 724. We noted that our courts have strictly construed criminal statutes defining offenses to avoid the creation of penalties by construction. *Id.* at 723 *citing State v. Keihn* (1989), Ind., 542 N.E.2d 963; *Bond, supra.*

It is apparent that the intent of our legislature was to protect school age children from the dangers of drug trafficking. Although some schools are not clearly recognizable as such from all points within the 1000 foot radius, the dealers bear the burden of ascertaining where schools are located and removing their operations from those areas or face enhanced penalties. *Williford, supra,* at 312 (citing *U.S. v. Falu* (2d Cir.1985), 776 F.2d 46, 50, which has been followed by the Sixth, Eighth, Ninth, and District of Columbia Federal Courts of Appeal). To say "building or structure" must include an entire building would mean that the legislature only intended to protect children in and around buildings that are entirely owned or rented by school corporations. If this is so, then children attending classes in a building partially rented by a school corporation would not be protected. This is contrary to logic, to the "common sense" approach of this court as shown in *Pridgeon, supra,* and to the intent of the legislature which is to protect children, not to protect buildings or structures.

In Bailey's case, there was evidence that the Center was used as a classroom site for the "Zero Base Program," a remedial program for students who failed to succeed in a regular education setting.[6] Under an oral lease, the Richmond School Corporation paid the Center $1500 rent per academic year for use of the Center's classroom. Classes were conducted for grades 7 through 12 (primarily) at the Center. Although the school system only rented one room for class purposes, student access to other parts of the Center was unrestricted. A certified teacher taught the curriculum which was consistent with the regularly scheduled classes.

We find the term "school property" in the statutes need not refer to an entire building. The fact classes were held in only a part of the Townsend Center does not render the drugs involved less harmful to the youth in whose hands they may eventually come to rest. Nor does the number of students, the size of the facility, or the number of classrooms alter the possibility that narcotics will not find their way out of the drug-free zone before they find their way into the bookbags, lockers, and pockets of children. *Williford, supra,* at 313. The State sufficiently established that the Townsend Center constituted school property to support an enhancement of Bailey's sentence.

Affirmed.

CHEZEM and RUCKER, JJ., concur.